## STATE v. WHITTINGHILL.

No. 6793.   Decided November 13, 1945.   (163 P. 2d 342.)

See 52 C. J., Rape, sec. 131; 44 Am. Jur., 917.

*Robert R. Hackett,* of Ogden, for appellant.

*Grover A. Giles,* Atty. Gen., and *W. Stanford Wagstaff,* Deputy Atty. Gen., for respondent.

TURNER, Justice.

Appellant was charged and convicted of the crime of assault with intent to commit rape. Utah Code 1943, 103-7-7. This is an appeal from the judgment pronounced after the return of the verdict. The appeal is based upon alleged errors of the trial court in refusing to grant a motion for dismissal and a motion for a new trial. The primary contention of appellant is that the evidence in support of the charge is insufficient; that for want of sufficient evidence to prove intent to rape, the case should have been dismissed.

The following statutory grounds were set forth in appellant's motion for a new trial: That the court misdirected the jury in matters of law and erred in decisions of law arising during the course of the trial; that it committed and allowed acts to be committed in the cause prejudicial to the substantial rights of the defendant; and that the

---

[1] *State* v. *McCune,* 16 Utah 170, 51 P. 818; *State* v. *Mortenson,* 95 Utah 541, 83 P. 2d 261.

verdict is contrary to law and the evidence adduced at the trial.

In order to pass upon the problems of this appeal, we shall examine the record to determine whether the evidence is sufficient to sustain the verdict and judgment and we shall also decide whether, in the light of the entire record, the defendant was given a fair and impartial trial.

The facts are substantially as follows with quoted excerpts from pertinent testimony: The prosecutrix at the time of the alleged assault was employed as a stenographer at Hill Field, which is located a few miles south of Ogden, Utah. On the morning of the alleged offense, the young woman overslept and missed her ride to work. She rushed to the business center of Ogden to catch a regular bus but arrived too late. She then stood in front of the Ben Lomond Hotel and while there saw the defendant in his cab. He spoke to her and she told him she wanted to go to Hill Field but did not have the money for a cab. At this time two army officers asked the defendant to drive them in his taxicab to the Union Station and defendant invited the young woman to go with him, stating that he might pick up a fare there for Hill Field. The young woman got into the front seat and rode with the defendant. At the depot she left the taxi to mail some letters and, at defendant's request, purchased some cigarettes for him.

After she returned to the cab, the two engaged in conversation. The prosecutrix testified that she then told defendant that she had $2 which she would give him, that she gave him her address and promised to pay him the balance on payday. The defendant left the cab for a moment and telephoned, re-entered the cab and then drove in the direction of Hill Field. When they arrived at the top of the hill, defendant drove off the highway where there were some trees and stopped the cab. She then testified that he asked her to come over and started to get rough:

"He pulled up my dresses and started to feeling around and everything—and when he found I wasn't well he swore terrible, and started the car and went home. But I guess that is all that saved me."

She was asked:

"Where were your legs bruised and that? A. Well right here on my knee—and along up here—and then I had grease all over my dress, and it was a sight."

The defendant, in returning to Ogden, stopped along the highway at a taxi telephone and then drove to Washington Terrace where he picked up a man passenger. He then drove to the Union Depot, the prosecutrix remaining with him in the front seat. She testified in substance that she knew he would go back into town and as it was not yet nine o'clock she could catch the next bus for Hill Field. Defendant and the prosecutrix engaged in conversation after taking the man passenger to the depot. She left the cab at 23rd Street, walking over to 25th Street where she took the bus for Hill Field. After arriving at Hill Field, she told her supervisor her story and about a half hour later she was driven to Ogden by a Mr. Bray and at Ogden made her complaint against the defendant.

On cross-examination the young woman testified that when they were stopped at the top of the hill the defendant asked her to slide over and that he then started putting his arms around her; that she got out of the cab a couple of times but that defendant got out on the other side of the car, came around and put her back in. She admitted that he never struck her.

After the examination of the prosecutrix by the district attorney, the trial judge conducted a lengthy examination of the witness and solicited some additional testimony. The judge asked:

"Did he do anything with reference to his trousers?"

She answered:

"Well, I think he unbuttoned his pants but I am not sure of anything else."

Other phases of this examination by the trial judge will be discussed later in this opinion.

Mr. Bray, who drove prosecutrix from Hill Field to Ogden, testfied that she was nervous and had bruises and scratches on her left leg; that he saw nothing out of the way with her dress.

The defendant testified in his own behalf. His testimony is much the same as that of the prosecutrix, except as to conversations and actions relative to the alleged assault and matters going to prove or disprove criminal intent. Regarding these he testified in substance that after first going to the depot the young woman said she did not have any money but she could be nice to him if she wanted to and that he replied:

"Alright, let's go."

He said:

"I figured she would do it, so out by the Apollo Club I pulled off the road"

and there he started to put his arm around her and she said she would make plenty of trouble for him if he did not take her back to town right then; that he started back to town and at Riverdale used the taxi 'phone and then drove from there to Washington Terrace; that she continued to ride with him and rode several miles away from Ogden; that at Washington Terrace he picked up a man and drove him to the Union Depot in Ogden; that he then drove to Pingree Street; that she was keeping the score sheet for him during this time; that when he stopped at Pingree Street she got out and in a friendly way told him she thought she would like to drive cab; that from where she left him it was just two blocks to the bus depot.

The defendant, in substance, testified that prosecutrix never made any attempt to get out of his cab until she got out there in Ogden; that when they were stopped out on the hill he told her if that was the way she thought she was going to get a free trip she could go back to Ogden. He testified that he did not attempt to have sexual intercourse with her, but that he had intended to have sexual inter-

course with her if she had been willing and had given her consent.

The crime of "assault with intent to commit rape" is a serious offense and warrants an indictment or information only after a careful investigation of the facts by an enforcement officer and proper consideration by the prosecutor. "Rape," as defined by our statute, is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under any one of six prescribed circumstances:

"(1) When the female is under the age of thirteen years. (2) Where she is incapable, through lunacy or any other unsoundness of mind, whether temporary or permanent, of giving legal consent. (3) Where she resists, but her resistance is overcome by force or violence. (4) Where she is prevented from resisting by threats of immediate and great bodily harm, accompanied by apparent power of execution, or by any intoxicating, narcotic or anaesthetic substance administered by or with the privity of the accused. (5) When she is at the time unconscious of the nature of the act, and this is known to the accused. (6) Where she submits under the belief that the person committing the act is her husband, and this belief is induced by any artifice, pretense or concealment practiced by the accused with intent to induce such belief." Utah Code 1943, 103-51-15.

The facts in this case restrict us to the consideration of whether the defendant assaulted the prosecutrix with intent to commit rape by force and violence and by overcoming her resistance. An assault with intent to commit rape includes every element of the crime of rape except that the act of intercourse is not committed.

"The felonious intent is the essence of the offense. It is elementary, when a specific intent is required to make an act an offense, that the doing of the act does not raise a presumption that it was done with the specific intent." *Cape* v. *State*, 61 Okl. Cr. 173, 66 P. 2d 959, at page 963; *Hall* v. *State*, 67 Okl. Cr. 330, 93 P. 2d 1107; *Kitchen* v. *State*, 66 Okl. Cr. 423, 92 P. 2d 860.

We think the facts, viewed most favorably for the prosecution, are not sufficient to constitute the crime of an assault with intent to commit rape. This court in *State* v. *McCune*, 16 Utah 170, 51 P. 818, held, as stated in the syllabi:

"In cases of assault with intent to commit rape, the intent with which the assault is made is of the essence of the offense; and, in order to convict, the jury must be satisfied, beyond a reasonable doubt, not only that the defendant had the ability and intended to gratify his passions on the person of the woman assaulted, but that he intended to do so at all events, and notwithstanding any resistance on her part.

"When the intent is the gist of the offense, that intent should be shown by such evidence as, uncontradicted, will fairly authorize it to be presumed beyond a reasonable doubt."

For similar pronouncements in well written opinions, see: *State* v. *Duckett*, 24 N. M. 28, 172 P. 189; *State* v. *Neil*, 13 Idaho 539, 90 P. 860, 91 P. 318. When the essential elements constituting the crime of an assault with intent to commit rape are made out and established, the question is for the jury, and it is not within the legal power of the Supreme Court to substitute its judgment for that of the jury. See *State* v. *McCune*, supra. However, if the evidence does not establish or prove every essential element of the offense then it becomes the duty of the trial court to dismiss the action and acquit the accused. *Cape* v. *State*, supra.

In *McDonald* v. *State*, 61 Okl. Cr. 287, 67 P. 2d 806, the court held, as stated in the syllabus by the court, that:

"While it is the law that a conviction for rape may be sustained upon the uncorroborated evidence of the prosecutrix, it is nevertheless equally well settled that, when such evidence is inherently improbable and almost incredible, there must be corroboration by other evidence as to the principal facts to sustain a conviction."

Here the court held the evidence to be insufficient.

In *Hall* v. *State*, supra, the court recited the evidence of the case in detail. The facts supporting intent are, we think, stronger than in the case at bar. The Oklahoma Court held the evidence was insufficient and reversed the judgment with directions to dismiss. In *Kitchen* v. *State*, supra [66 Okl. Cr. 423, 92 P. 2d 863], the court says:

"The intent is the gist of the offense, and every laying of hands on the female under the age of consent, even though improper, does

not necessarily imply an intent to have sexual intercourse. Indecent liberties may be taken with a child without any such intent. The statute recognizes this in providing a penalty for taking indecent liberties with a female child without intent to commit the crime of rape."

See *State* v. *Mortensen*, 95 Utah 541, 83 P. 2d 261. And likewise, in the case now before us, the fact that the accused in court admitted that it was his intention to have sexual intercourse with the prosecutrix and that he put his hands on her is not evidence that will, of itself, support the criminal intent required for conviction of assault with intent to rape, for such evidence will support a contention that the accused did the acts for the purpose of arousing the passion of the prosecutrix expecting her to submit to intercourse, just as well as a criminal intent to commit rape.

Specific intent may be infererd from acts. It may be shown like many other facts from surrounding circumstances. The circumstances when taken together must admit of no other reasonable hypothesis than that of guilt to warrant conviction. *Kitchen* v. *State*, supra.

The case of *State* v. *Hennessy*, 73 Mont. 20, 234 P. 1094, 1096, when considered with the case at bar is both interesting and enlightening. The facts of the case are much stronger in support of criminal intent to commit rape than those now before us. The Montana Court held:

"We credit every physical act of the defendant as detailed by the prosecutrix with the full force of every reasonable deduction or inference, and every word uttered with its most comprehensive meaning, and we are unable to find fact, inference, or deduction which in our judgment will sustain the contention of the state that the defendant at any time entertained the intention to overcome the physical resistance of the prosecutrix and have sexual intercourse with her without her consent. Accepting her story as true, she was, of course, offended, assaulted, and aggravatingly insulted. From her testimony, if true, we must conclude that the defendant desired to have sexual intercourse with her, and as said in *Commonwealth* v. *Merrill*, supra [14 Gray, Mass., 415, 77 Am. Dec. 336], 'There is ample proof of gross indecency and lewdness' and simple assault. However, such facts alone do not constitute an attempt to commit the crime of rape. They will support a charge of assault of an aggravated character,

and, as to this, the state was not without an ample remedy, and available and adequate statutory provision for punishment in the event of a conviction. The defendant's conduct, as detailed by the prosecutrix, was reprehensible, the more so because of his station in life, and may not be justified or approved in morals or law."

There is no evidence that the defendant said he was going to rape the prosecutrix or have intercourse with her against her will. The accused never threatened the lady, never struck her, nor tore her clothing from her person. What he did supports the contention that he was attempting to gain her consent and not to overcome any mental or physical resistance by force. The acts of the prosecutrix as they left the scene of the assault do not support any claim of such criminal intent. We think the record fails to establish the criminal intent required for a conviction. The accused was guilty of attempted immorality and by prejudice was convicted of a heinous offense which the record does not warrant.

If the accused at the time he first unlawfully placed his hands upon the prosecutrix had the intention of raping her, why did he fail to do more than he did? The lust which impresses the mind with intent to rape and causes one to commit a criminal assault is not mild, neither easily diverted nor dissipated, except by unforeseen forces or unexpected interference. Sexual passion so violent as to create the criminal intent to rape is not destroyed or diverted by mild resistance, uncleanliness or ordinary evidence of the menstrual period.

Was the defendant deprived of a fair and impartial trial? The law governing the offense charged, both by statutes and by the decisions of this court, is well established. A fundamental precept of our criminal procedure is that a man accused of a crime is presumed to be innocent until proven guilty beyond a reasonable doubt and that this presumption shall accompany the defendant through the entire trial. If this presumption is destroyed by statements of court or counsel or by conduct of either, the accused is not afforded a fair and impartial trial.

There are some criminal offenses that by their inherent nature are so repulsive or even so abhorrent to most people that the mere accusation, unless accompanied by every precaution of law, creates a prejudice. Rape and assault with intent to commit rape are among these. If the trial judge does or says anything to indicate a feeling against the accused, instructions and admonitions given in an attempt to rectify the error are valueless and the legal presumptions formulated for the accused are as fruitless as faith without effort or work. A prejudice interjected by a trial judge, in such type of case, cannot be overcome by ordinary instructions or common admonitions.

In this case, the trial judge asked numerous questions and carelessly stated to the prosecutrix:

"Tell us about that part of it. * * * Legally it has some importance and we are not trying to embarrass you; but it is necessary legally, for this man to be convicted of this offense, that that testimony be given."

Objection was made by counsel and the court admonished the jury, but the damage was done.

The court also asked leading and suggestive questions which clearly evidenced the judge's feelings in the trial. For example, after the prosecutrix had stated her complete story on direct and had been examined by the district attorney on redirect, the trial judge conducted a lengthy examination. The witness had just reiterated:

"Oh, he just said 'come on over,' and started putting his arm around me, and I told him 'no,' that I wanted to go to work. Q. What next was said, if you remember? A. About all I can remember then is that he swore. After he knew he wasn't going to get anywhere he swore and then he started his car up and went, after about ten minutes time, or it may be a little longer. Q. Where did he place his hands, if at all? Did you say he raised your dresses? A. Yes."

Similar examination was continued for some time and then the court asked:

"did he do anything with reference to his trousers?"

Until this time, neither on direct, cross-examination or redirect, had there been a word about the defendant's trousers.

"A. Well, I think he unbuttoned his pants, but I am not sure as to anything else."

And the judge continued at length.

It is apparent that the court was asking questions in search and hope for answers that would help to make a case against the accused. The witness gave the court just the kind of answers wanted, but not as positive and complete as hoped for. Testimony so solicited deserves little weight or consideration. Had it been a fact known to the witness, that the accused unbuttoned his trousers, she would have stated that fact without such solicitation. By such conduct, the court allowed itself to become part of the prosecution.

We are of the opinion that the court's conduct was prejudicial and robbed the defendant of every legal presumption to which he was entitled. This is apparent for although the facts of the case, viewed in the most favorable light for the State, are insufficient to warrant a conviction, the jury left the courtroom at 4:27 p. m., court recessed at 4:30 p. m. and the jury returned with its verdict at 4:36 p. m. The jury had been so influenced that they found no necessity to discuss the evidence of the case in the light of the instructions just given them.

The strongest case that can be made against the accused is that he assaulted the prosecutrix with intent to have sexual intercourse, but this intent was vacated when she resisted and he discovered that she was unwell. We believe evidence of criminal intent to warrant submission of facts to a jury on a charge of assault with intent to commit rape must be much stronger and far more fixed and convincing than established by the most favorable evidence presented in this case.

The judgment is reversed and the cause remanded to the District Court.

LARSON, C. J., concurs.

WADE, Justice (concurring in result).

I concur with the result on the ground that the evidence was insufficient to justify a finding that the defendant at the time of the assault had the intention to commit rape. The proof of such intention was all circumstantial. All of the circumstances shown by the evidence were reasonably consistent with the existence of no such intent and therefore the evidence will not support a conviction in a criminal case.

I also agree with the prevailing opinion that much of the examination of the prosecutrix by the court was improper. However, I do not think it is improper for the court to develop all the facts in a case if it is done in an appropriate manner, but the court should never indicate an interest in getting a conviction or acquittal. It should only act in such manner as will best tend to develop the facts as they exist. The court should never do anything which might be interpreted as showing its opinion on the facts and should not lead a witness to say things which would apparently be to his interest to say. I, however, doubt that anything said or done in this case by the court was sufficiently prejudicial to require a reversal on that ground.

WOLFE, Justice (concurring specially).

I concur on the following grounds: The evidence is such that the jury would not have been justified in finding beyond a reasonable doubt that the defendant had the intent to have intercourse with the prosecutrix by force or fear. The only evidence of that is his pushing her back in the car when she tried to get out. This is more consistent with intent to rape than with intent to gain consent.

The statement that "an assault with intent to commit rape includes every element of the crime of rape except that act of intercourse is not committed" is not exactly accurate and is somewhat puzzling. If one envisages the situation as if rape had been committeed and then subtracts intercourse that may or may not leave assault with

intent to commit rape because assault with intent to commit rape may be proved at a point short of the amount of force necessary to overcome the resistance. The defendant may have announced to the victim at the beginning of the assault or to another that he intended to have intercourse regardless of consent. That evidence plus the assault would be sufficient to go to the jury but might be less than the rape with just the intercourse subtracted.

I do not feel quite competent to join as an authority on the intensity of the lust which will move man to commit rape and what circumstances will cause him to turn from his intent to commit it. If some one was so impressed with my competence as to ask my opinion, my guess would be that men differ greatly in that regard as in other respects and that there would be a great variance in the potency of a particular condition to divert them after embarking on such a sinister course.

I agree that the judge in this case may have, from the record, seemed overanxious to develop evidence from an embarrassed witness in support of the accusation but I do not think he so intended it. His mental process was one of trying to develop matters which he thought she may have known about and overlooked. While I think a judge should be judicial and impartial at all times, I am not one who thinks that he should be merely an umpire in a case. He presides over a judicial inquiry. It is within his province to clarify and bring out matters which may be of aid to the jury but he must do it in such a way as not to give the jury the impression that he thinks one side or the other should prevail. Unfortunately, the judge by some of his questions may have given the impression that he thought the defendant was guilty of the crime charged and that he was bent on revealing evidence necessary to support his belief. But having decided that the case must be reversed on the ground of insufficient evidence to go to the jury, it is unnecessary to go further.

McDONOUGH, J. concurs for the reasons stated in the opinion of Mr. Justice WOLFE.