## STATE v. WATERS.

No. 7812.   Decided February 11, 1953.   (253 P. 2d 357.)

See 75 C. J. S., Rape, sec. 77.  Assault with intent to commit rape. 44 Am. Jur., Rape, sec. 21.

*Tex R. Olsen,* Richfield, for appellant.

*Clinton D. Vernon,* Atty. Gen., *Richard J. Maughan,* Asst. Atty. Gen., *J. Vernon Erickson,* Dist. Atty., Richfield, for respondent.

WADE, Justice.

Defendant, Delbert Waters, waived a jury trial and the court found him guilty of an assault with intent to rape a 15 year old girl, hereinafter called the prosecutrix. He appeals contending that the court's finding, that all reasonable doubt that the assault was made with intent to commit rape was eliminated, was unreasonable under the evidence.  We conclude that such finding was within the bounds of reason, and affirm the judgment.

On July 31, 1951, the father and mother of the prosecutrix were away from home visiting Yellowstone National Park and the prosecutrix was alone in their Sigurd, Utah home. About 12:20 in the morning of August 1, after she had turned the lights off and retired to bed, Gary, a 16 year old neighborhood boy acquaintance, came with the defendant, a more mature man, but not so well known to the prosecutrix, to her home which they entered without knocking and turned on the front room lights. Both Gary and defendant had been drinking since starting out with the avowed intention to get drunk about 8:30 the previous evening, and when they departed left empty beer cans in the home. On first entering the house, Gary called and asked the prosecutrix if his girl friend was staying with her and when she answered "no" he and the defendant proceeded without invitation into her bedroom where there was some talk about calling another girl, and although the prosecutrix suggested that it was too late Gary, apparently to make such call, left Delbert in her room alone. The prosecutrix asked defendant to leave the bedroom but he remained there making some advances by patting her on the head and calling her "blondie" at which she tried to slap his hand. Upon her call, Gary returned to the bedroom and they asked her to get up and call the other girl; this she refused while they were in the bedroom and with some urging on the part of Gary, the defendant left the room with Gary while the prosecutrix slipped into a house coat and then she tried to make the call but received no answer. She requested them to leave a number of times and requested Gary not to leave her alone with defendant, and while Gary was lying on the floor defendant again began making advances toward her which she tried to avoid by running into her bedroom but before she could get the door closed he forced his way into the bedroom with her where he put his arms around her and pushed her onto the bed and lay on top of her. When she was unable to push him off, she called to Gary who came into the bedroom and took hold of defendant and partly by force and partly by per-

suasion got defendant off from her and then, after she had urgently requested defendant to leave the house and Gary not to leave without him, they left.

As soon as they were out, she locked the front door, testifying that she did not lock the back door because she had to leave it open so a chore boy could get in early in the morning. She again turned the lights off and retired, and soon she heard their car drive away and she went to sleep.

A few hours later she was aroused from her sleep by the defendant in her bed embracing her around the waist from behind, with his face pressed against the back of her neck. He was clothed but his pants were unbuttoned and his penis out, and he was trying to press it between her legs. When she tried to remove his hands, he moved them onto her breasts pressing "so hard I could not move" and then down to the lower part of her body under her panties which he tried to remove. She made a desperate effort to remove his hands and he gathered her hands in his and held them firmly for a short period and she raised partly up on her elbow. He remained still and she felt his grasp ease so she took one hand after the other from around her body and when she found that he did not move them back but appeared to have passed out or fallen asleep she darted for the bathroom and locked the door. He made no further move and she slipped into a house coat and in her bare feet ran for a couple of blocks to her uncle and aunt's place who, after she had aroused them, called the town marshal who in turn after he had found defendant still asleep on her bed called the county sheriff who took the defendant into custody.

Defendant contends that the evidence does not exclude all reasonable doubt of his intention to force intercourse upon her. He relies on *State* v. *Whittinghill,* 109 Utah 48, 163 P. 2d 342, quoting extensively from Mr. Justice Turner's opinion which was not concurred in by the majority of the

court. There a taxi driver took the prosecutrix, who wished to go to her work at Hill Field but lacked the necessary fare, to a lonesome road where he proposed intercourse and made an indecent assault but desisted when he found she was unwell. We held that those circumstances did not exclude all reasonable doubt of his intention to have intercourse by force since he ceased his efforts when he found she was unwell.

Here the facts are different; every conscious act he did after he returned alone to her home indicated that he intended to accomplish intercourse with her by force. He broke into the home where he knew she was alone, he unbuttoned his pants exposing his penis and got into her bed with her while she was asleep and embraced her tightly at the same time trying to force his penis between her legs, and placing his hands on her breasts and privates at the same time trying to remove her panties. This continued until he suddenly, and apparently unexpectedly, passed out or fell asleep. There is nothing in this case which indicates an intention on the part of defendant to voluntarily cease or withdraw from the struggle. Up to the time that she noticed his grip was weakening, he was strong and seemed to be accomplishing his purpose. This case is somewhat similar to the case of *People* v. *Norrington,* 55 Cal. App. 103, 202 P. 932, where a policeman started to drive a married woman home who had inquired of him about the street car, but drove her to lonesome road where he tried to force her to have intercourse with him. In the course of the struggle, he had an emission without penetration and on those facts the court held that it was a question of fact for the jury whether he intended to overcome her resistance by force and violence. In that case, as in this one, the defendant ceased the struggle on account of his own physical condition.

We do not question the rule that in order to sustain a conviction for an assault with attempt to commit rape, the Court had to find beyond a reasonable doubt that the de-

fendant intended to violate the girl by force in spite of anything she could do to prevent it. But if he had such intent and did the overt acts above described in pursuance thereof, the fact that something occurred which thereafter caused him to change his intention would not prevent his being guilty of such assault. The only basis upon which we would be authorized to reverse the conviction would be upon the basis that the finding of guilty was such that reasonable minds could not so conclude. We conclude that the finding of the court that the evidence excluded all reasonable doubt of his intention to commit rape was within the bounds of reason.

Judgment is affirmed.

WOLFE, C. J., and McDONOUGH, and CROCKETT, JJ., concur.

HENRIOD, J., dissenting.

I dissent, respectfully suggesting that the main opinion has confused the necessary intent involved in an assault with intent to commit rape, with a drunken, poor and unsuccessful show of salesmanship. There is no violence here of the type generally attending the serious offense charged, where more than a woman's feelings are injured. There was no torn clothing, no scratches, lesions or bruises. The only evidence of intent to overpower by force was a roving hand and a firm embrace,—both of which became relaxed when the defendant found himself, not in the arms of the prosecutrix, but in those of Morpheus.

To say the facts of this case justify a conclusion that the acts showed beyond a reasonable doubt that the accused had the specific intent to overpower by force, or that his actions were such as to be unexplainable on any reasonable hypothesis other than that of intent to overpower, is, to the writer, unrealistic and not reflected in the record.[1]

---

[1] *People* v. *Mullen*, ... Cal. ..., 114 P. 2d 11 (1941).

It is difficult to comprehend a rape by one who sleeps, and equally difficult to contemplate a person bent on sex by force, succumbing to peaceful slumber. To convict here is to punish for violating the biblical canon that "as a man thinketh, * * * so is he." Fortunately, such a doctrine has received little or no support from the courts.—otherwise few would be spared the prison's lament.

It is believed that had the prosecution charged an assault, the facts more nearly would have fitted the offense. The facts of the *Whittinghill* case, with its evidence of scratching, bruising and some unnecessary roughness, seem stronger than those here, where the best that can be said is that a firm desire yielded to sweet repose. The accused either was too drunk to have a specific intent to rape, or too tired to acquire one.