STATE OF HAWAII *v.* FRANK KAMAHALU KEKAUALUA.

No. 4626.

NOVEMBER 1, 1967.

RICHARDSON, C. J., MIZUHA, MARUMOTO,
LEVINSON, JJ., AND CIRCUIT JUDGE KING
IN PLACE OF ABE, J., DISQUALIFIED.

OPINION OF THE COURT BY MIZUHA, J.

Defendant was convicted by a jury of assault with intent to rape. He appeals from the judgment of conviction, contending first, that the evidence is insufficient to prove he "intended to have sexual intercourse with the prosecutrix by force and against her will"; and second, that he "was not identified beyond a reasonable doubt to be the person who committed the offense." Both contentions are without merit.

The complainant testified to the effect she was asleep on her bed when suddenly awakened to find her assailant with his face covered with a pair of her panties sitting on her thighs with his legs on both sides of her body. The assailant had his hands around her throat and was lightly massaging it. As she screamed and struggled with her assailant, the sheet which covered her slipped down and her body, dressed only in a pantie, was exposed. The complainant was menstruating at the time and her pad was soaked through to her pantie, which was bloody. He was crouched over her in a bent position and she was unable to move her arms

as they were pinned to the bed. When the sheet slipped down, the assailant moaned and groaned as he looked down on her body and then punched her in the left eye three or four times, saying several times, "shut up, woman." The assailant had not removed his trousers and complainant was unable to state that he had his zipper down. As complainant continued screaming, he got off the bed, took off the pantie from his face and ran out the rear door.

The complainant wrapped a sheet around her body and ran after her assailant. As she was standing by her mailbox she saw him get into a red car with a black top, which was a convertible. She went back into her home, wrote down the license number which she testified to as "311624," and then ran to her neighbor's home for help. She told the neighbor that a man was trying to kill her. As a result of the attack, her neck and the area of her face surrounding her eye were bruised.

Complainant was unable to identify her assailant but could generally describe his physical features. However, she identified the defendant as being the person who had wandered into the basement of her house two or three weeks before the incident, ostensibly looking for the owner of the house for whom he worked several years before. Defendant admitted he owned a red and black Oldsmobile convertible, license number 3H624. The general physical description of the defendant and his car by the complaining witness and her neighbor who saw him leave the residence, together with the testimony of the witnesses who placed a red colored car near the home of the complainant, point to the defendant as the person who committed the offense. A police officer also testified that on the same morning he pursued defendant who was driving away from the complainant's home at a high rate of speed at a point two miles from said home. After talking to defendant at approximately 8:15 a.m., he returned to routine patrolling. At 8:17 a.m., he received a call in his car to investigate the complaint made by the complainant. Defendant denied being at complainant's home two or three weeks prior to the incident and testified that he was nowhere near complainant's residence that morning. However, he did state that no

one other than himself had driven his car during the morning of the incident. His alibi was rejected by the jury.

The crime of assault with intent to commit rape requires the prosecution to establish beyond a reasonable doubt that the defendant committed an assault, with the specific intent to have intercourse, and with the specific intent to use sufficient force to overcome the woman's will. The jury's finding of the requisite intent and force is clearly reflected in its verdict. *See Territory* v. *Noguchi,* 38 Haw. 350, 353; *State* v. *Dizon,* 47 Haw. 444, 465, 390 P.2d 759, 771.

The jury is the sole judge of the credibility of the witnesses or the weight of the evidence. *State* v. *Carvelo,* 45 Haw. 16, 33, 361 P.2d 45, 54. When a jury verdict involves conflicting evidence and depends on the determination of credibility of witnesses or the weight of evidence, the test on appeal is whether there is substantial evidence to support the verdict of the jury. *Territory v. Ebarra,* 39 Haw. 488, 492; *State* v. *Carvelo, supra* at 33; *State* v. *Tamanaha,* 46 Haw. 245, 251, 377 P.2d 688, 692; *State* v. *Arena,* 46 Haw. 315, 324, 379 P.2d 594, 601; *State* v. *Cummings,* 49 Haw. 522, 533, 423 P.2d 438, 445. There is substantial evidence on the record to warrant the verdict against the defendant.

Judgment affirmed.

*George S. Yuda (Ushijima, Nakamoto* and *Yuda* of counsel) for defendant-appellant.

*Mamoru Shimokusu,* Deputy County Attorney *(Yoshito Tanaka,* County Attorney, with him on the brief) for plaintiff-appellee.

---

### CONCURRING OPINION OF LEVINSON, J.

I agree with the majority opinion that the conviction should be affirmed. I believe, however, that we should clarify the test we use in reviewing convictions in criminal cases, and the precise way in which the test functions. Moreover, I think we should recognize the difficulty inherent in establishing the requisite

elements of specific intent, which I do not think the majority opinion does.

### Test on Appeal in Criminal Cases

As the majority opinion indicates, there are serveral decisions of this court stating the test to be applied in reviewing a conviction. After scrutinizing those cases, I find little discussion justifying the test and little indication of how the test is to be applied. As one member of the court, I think it is our duty, particularly in criminal cases, to be precise not only as to the applicable test, but also as to the manner in which it functions. I do not think that the majority opinion or our previous decisions satisfy either of the requirements.

The majority opinion says: "* * * the test on appeal is whether there is substantial evidence to support the verdict of the jury." Our most recent prior pronouncement in this area was in *State* v. *Cummings*, 49 Haw. 522, 423 P.2d 438 (1967), where this court approvingly quoted from a previous case the test to be applied:

> "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there is substantial evidence to support the conclusion of the trier of fact." 49 Haw. at 533, 423 P.2d at 445, quoting from *State* v. *Tamanaha*, 46 Haw. 245, 251, 377 P.2d 688, 692 (1962).

In that case we also quoted favorably from *State* v. *Carvelo*, 45 Haw. 16, 33, 361 P.2d 45, 54 (1961), that the court must affirm a conviction if there is "any substantial evidence amounting to more than a mere scintilla."

Our prior cases make clear, and I agree, that "this court will not attempt to reconcile conflicting evidence," *Territory* v. *Ebarra*, 39 Haw. 488, 492 (1952), and that the court should not interfere with a jury decision based on "credibility of witnesses or the weight of the evidence," *State* v. *Carvelo, supra* at 33, 361 P.2d at 54. I do not think that these decisions should be interpreted to preclude this court from determining whether, as a

matter of law, the evidence is such that reasonable men should have a reasonable doubt as to an essential element of the crime for which the defendant was convicted. This is the place at which I part company with the majority opinion. I would limit the aforementioned cases specifying the test to be applied on appeal to review of the jury's factual conclusions. I would permit this court to inquire into the range of reasonable inferences from the facts *as found and supported by substantial evidence.*

As to basic test to be used in determining whether the jury's factual conclusions should be sustained, I find that the phrase "substantial evidence *amounting to more than a mere scintilla,"* is inherently inconsistent. Black's Law Dictionary (4th ed. 1957) defines "scintilla of evidence" as "a metaphorical expression to describe a very insignificant or trifling item or particle of evidence." The inconsistency between equating substantial evidence with evidence barely exceeding an insignificant quantum is obvious. If substantial evidence is necessary, the qualifying phrase is meaningless and confusing and therefore should be omitted. If only more than a scintilla is necessary, less than substantial evidence is sufficient. I would accept the jury's finding of fact where it is supported by substantial evidence, defined as evidence which would justify a reasonable man in making the finding.

Once the facts are established by applying the foregoing test, this court has the obligation to determine whether the jury acted in accordance with the proper legal standard in finding that the defendant was guilty. We must determine whether the facts were capable of a reasonable inference of innocence. If they were, the trial court should have directed a verdict of not guilty. If in such circumstances it failed to do so and the jury convicted the defendant, it is clear that the jury applied an incorrect standard in its deliberations. Its duty is to acquit the defendant unless the evidence excludes every reasonable inference of innocence. It is improper for a jury to weigh two conflicting reasonable inferences, one of which is consistent with innocence, and to determine which is the more probable. As long as there is a reasonable inference of innocence, the prosecution has failed to discharge its burden of proof. This approach does not require the court to

weigh evidence or to determine credibility of witnesses. It requires the court to protect a defendant from being convicted by less than the constitutionally mandated standard.

I recognize that this distinction may not have been expressed in prior decisions by other appellate courts. However, it has been held that a court may reverse a conviction where it determines that it is "impossible that a jury of reasonable men could have fairly reached the conclusion that the appellant, in what he did, necesarily intended to commit rape." *Hammond* v. *United States*, 127 F.2d 752, 753 (D.C. Cir. 1942). It is a short step from this type of analysis, determining whether any reasonable inference would be consistent with guilt, to an inquiry into whether any reasonable inference would be consistent with innocence. Adopting a similar approach, the supreme court of Utah affirmed a conviction on the grounds that

> We conclude that the finding of the court that the evidence excluded all reasonable doubt of his intention to commit rape was within the bounds of reason. *State* v. *Waters*, 122 Utah 592, 596, 253 P.2d 357, 359 (1953).

In reviewing the conviction in this case, I accept, as the majority opinion does, the prosecutrix's testimony, but I think that we must determine whether such testimony justifies a reasonable man in having a reasonable doubt as to an essential element of the crime of assault with intent to commit rape.

### Intent to Have Intercourse

I agree that the evidence would not support a reasonable inference that the defendant did not intend to have intercourse with the prosecutrix. But I think that the question of an individual's state of mind is so complex and so difficult to determine that we should indicate precisely the evidence supporting our conclusion.

The defendant had masked his face, entered the bedroom, climbed on the bed, was straddling the sleeping woman, and was stroking her neck. On the other hand, he had not removed his trousers and there was no evidence that he had unzipped his trousers. He had climbed on the prosecutrix without removing

the sheet from her body, and he had begun by stroking her neck and not her genitals.

The facts in each assault with intent to rape case generally differ from all the others and I have been unable to find, and counsel have not cited, any case with substantially the same facts. In the leading case in this jurisdiction, *Territory* v. *Noguchi*, 38 Haw. 350 (1949), this court sustained a conviction on proof that the defendant broke into his neighbor's bedroom at night, touched the sleeping prosecutrix's genitals, and, while standing beside her, started to remove his trousers. In the instant case, the defendant was in a position to have intercourse but had not removed his trousers. The defendant's lack of preparation would appear to provide some grounds for distinguishing the present case from the *Noguchi* case. It must be recognized, however, that the defendant's exposure of his body is not an absolute prerequisite to a finding of intent to have intercourse, *People* v. *Meichtry*, 37 Cal. 2d 385, 389, 231 P.2d 847, 849 (1951).

There are cases in other jurisdictions where convictions were reversed on evidence showing merely that the defendant broke into the woman's house or attacked her in an isolated place by grabbing her throat or throwing her onto the ground, *People* v. *Bridges*, 28 Ill. 2d 165, 190 N.E.2d 719, *cert. denied*, 375 U.S. 865 (1963); *Spurlock* v. *State*, 130 So. 155 (Miss. 1930) ; *Mungilla* v. *State*, 118 S.W.2d 598 (Tex. Crim. App. 1938). In the *Spurlock* case, the defendant, a negro, broke into a woman's house, grabbed her throat and choked her. She screamed and he opened a knife. When she continued to scream, he ran away.

The main difference between this case and the *Spurlock* case, where the court stated it "painstakingly examined this record" and found no evidence of any intention by the defendant "to gratify lust," 130 So. at 156, is that here the defendant was straddling over the woman. It is not inconceivable that the defendant was interested in something less than intercourse but I think the facts as the jury must have found them were insufficient, although barely so, to support a reasonable inference that the defendant was interested in something other than intercourse.

*Intent to Use Force*

The majority opinion does not discuss the issue of intent to use force. Invariably the basic assault will involve some use of force. The force which the defendant must intend to use is that necessary to overcome the prosecutrix's resistance. The use of force merely to quiet a screaming woman is not sufficient, *cf.* *People* v. *Richardson,* 18 Ill. 2d 329, 333, 164 N.E. 2d 61, 63 (1960).

The evidence is not as clear as the majority opinion intimates. If the defendant had intended to use force, the most natural thing for him to have done while the prosecutrix was still asleep would have been to prepare himself by removing or unzipping his trousers. He would have removed the sheet. He would not have awakened the prosecutrix by massaging her neck lightly. When he punched her, he may have been trying to quiet her and not to overcome her will. If these facts stood alone, I would find them sufficient to justify a reasonable doubt as to the defendant's intention to use force to overcome her will.

There are, however, other facts which vitiate whatever doubt those facts create. The defendant had pinned her arms before waking her. He said nothing to attempt to convince her to yield willingly. He continued to struggle with her even after it was apparent she did not intend to submit voluntarily. He had masked his face. He testified he did not know her personally. The only basis for inferring that she would submit to a masked stranger was that she would yield to any man. For this there is no support. In view of these facts, there is no basis on which the jury could reasonably have doubted that the defendant intended, at some time during the assault, to use whatever force may have been necessary to overcome her will. See *State* v. *Johnson,* 243 Minn. 296, 67 N.W.2d 639 (1954), *State* v. *La Vine,* 68 Wash. 2d 83, 411 P.2d 436 (1966). The fact that he desisted is no defense and does not negate the finding that the defendant acted with the intent to use force.