STATE of Utah, Plaintiff and
Respondent,

v.

Vance MURPHY, Defendant
and Appellant.

No. 18814.

Supreme Court of Utah.

Oct. 31, 1983.

Martin W. Custen, Ogden, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Appellant owned and operated a business known as "The Store" in Ogden, Utah. On August 8, 1981, an undercover agent for the Ogden City Police Department entered The Store and purchased a package of rolling papers labelled "Reefer Rollers" from a store employee. After leaving with the papers, the informant was instructed by a waiting vice officer to return to the shop and elicit an incriminating statement from the salesperson concerning the intended use of any items bought. The informant re-

turned to the shop, engaged the salesperson in conversation and purchased a "power hitter"[1] and some mannitol powder.[2] At no time did the salesperson comment as to the intended use of the items purchased. There was no literature or advertising with any of the items purchased concerning their purported uses. Further, there was a disclaimer sign posted conspicuously which indicated that items purchased in The Store were not intended to be used for illegal purposes. At no time during these transactions was appellant present in the shop.

Based on the purchases of these three items, appellant was charged with *delivering* drug paraphernalia under § 57–37a–5(2) of the Utah Drug Paraphernalia Act (U.D.P.A.).[3]

The entire case presented by the prosecution at trial consisted of the testimony of two individuals: (1) the undercover agent, who testified as to the sales transaction and as to her opinion of the uses of the three items; and (2) a detective with the Narcotics Division of the Ogden City Police Department, who testified as to his opinion as to the uses of the items purchased. Both witnesses agreed that each of the purchased items had legitimate uses. Based on this testimony, appellant was convicted of violating the Utah Drug Paraphernalia Act. We reverse.

The U.D.P.A. is patterned closely after the Model Drug Paraphernalia Act (Model Act), drafted by the Drug Enforcement Administration of the U.S. Department of Justice. The Model Act and its progeny were designed to overcome the constitutional infirmities that plagued early "head shop" legislation.[4] On the whole, that effort has proved successful.

1. A power hitter is an item, often cylindrical but in a variety of shapes, used to collect a column of smoke to avoid dissipating the effect. It has a nozzle used to direct the smoke to the user's face. A power hitter is a special version of a bong, which is listed as an example of drug paraphernalia in U.C.A., 1953, § 58–37a–3(12).

2. Mannitol powder is listed as an example of drug paraphernalia in U.C.A., 1953, § 58–37a–3(6). It is often used to "cut" or dilute controlled substances, such as cocaine. It also has legitimate uses, including baby laxative and food additive.

3. U.C.A., 1953, § 58–37a–1, *et seq.*

4. *See* Prefatory Note to the Model Act.

Much of the doubt as to the constitutionality of drug paraphernalia laws was laid to rest as a result of the decision of the United States Supreme Court in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*[5] In that case, a pre-enforcement challenge to the constitutionality of a head shop ordinance, the Court held that the ordinance, which is much less detailed than the statute now before us, was not so facially overbroad or vague as to offend the Constitution. In so doing, the Court outlined a method for analyzing such facial challenges:

> In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications.

455 U.S. at 494–95, 102 S.Ct. at 1191.

The success in drafting the Model Act to avoid constitutional problems is evidenced by the fact that the courts in post-*Flipside* cases have uniformly concluded that, under the *Flipside* guidelines, facial challenges to the constitutionality of statutes or ordinances patterned after the Model Act must fail,[6] reasoning that the enactments neither reach a substantial amount of constitutionally protected conduct nor are impermissibly vague in all of their applications. Further, the U.S. Supreme Court has recently denied certiorari in at least two circuit court decisions upholding the facial validity of the Model Act progeny.[7] Finally, the Sixth Circuit, which prior to *Flipside* had struck down an ordinance based on the Model Act on constitutional grounds,[8] has concluded that "the mandate of the Supreme Court is clear"[9] and has reluctantly joined the other circuits in upholding the progeny of the Model Act.

As to the U.D.P.A., legislative enactments are accorded a presumption of validity. We will not strike down a legislative act unless that act is clearly in conflict with the higher law as set forth in the Constitution.[10] Statutes similar or identical to the U.D.P.A. have uniformly been held to be facially constitutional in extensive and well-reasoned opinions.[11] Since we agree with the reasoning of those courts, we uphold the facial validity of the U.D.P.A.[12] and confine our discussion to the problem of specific enforcement in light of the rationale for upholding the facial validity.

---

5. 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

6. *See, e.g., New England Accessories Trade Ass'n v. City of Nashua,* 679 F.2d 1 (1st Cir. 1982); *Levas & Levas v. Village of Antioch,* 684 F.2d 446 (7th Cir.1982); *Stoianoff v. Montana,* 695 F.2d 1214 (9th Cir.1983); *Kansas Retail Trade Cooperative v. Stephan,* 695 F.2d 1343 (10th Cir.1982).

7. *Casbah, Inc. v. Thone,* 651 F.2d 551 (8th Cir. 1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1983); *Florida Businessmen for Free Enterprise v. City of Homestead,* 679 F.2d 252 (11th Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983).

8. *Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916 (6th Cir.1980). The Sixth Circuit's opinion was twice vacated by the Supreme Court, 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981), and 456 U.S. 968, 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982).

9. *Record Revolution No. 6, Inc. v. City of Parma,* 709 F.2d 534, 536 (6th Cir.1983).

10. *Zamora v. Draper,* Utah, 635 P.2d 78 (1981); *Ellis v. Social Services Dept.,* Utah, 615 P.2d 1250 (1980).

11. *Supra* n. 6.

12. Appellant herein, along with several other plaintiffs, filed an action in the United States District Court for the District of Utah on May 29, 1981, seeking temporary and permanent injunctive relief from enforcement of the U.D. P.A. and asking for a declaratory judgment finding the Act unconstitutional. *Murphy v. Matheson,* Case No. NC–81–0058 (decided May 6, 1982).

The district court denied injunctive relief and held that the U.D.P.A. was neither unconstitutionally vague or overbroad nor did it violate First Amendment rights.

To date, the overwhelming majority of cases interpreting the Model Act have been pre-enforcement facial challenges. Only a few courts have attempted to interpret and apply the law in specific criminal proceedings,[13] as we must do here.

■ In order to convict a person under the U.D.P.A., the statute must be read as a whole, and each section must be read in light of the others. Sections 58–37a–3, –4, and –5 are the relevant sections for the purposes of this case.

Sections –3 and –4 are definitional. In § –3, drug paraphernalia is defined as anything "used or intended for use" in manufacturing or ingesting controlled substances. A list of examples follows, with each example restating the requirement that the named object be "used or intended for use" to manufacture or ingest controlled substances. The list concludes with a catchall category of "objects used or intended for use to inject, inhale or otherwise introduce [controlled substances] into the human body . . . ," followed by another list of exemplary items, such as pipes, roach clips and bongs.

■ It has been uniformly held that the intent referred to throughout § –3 is that of the person alleged to have violated the statute.[14] That intent need not be proved by direct evidence.[15] It may be inferred from the actions of the defendant or from surrounding circumstances.[16]

It has further been generally held that the exemplar items are not paraphernalia per se but only become so when coupled with the seller's intent that they be so used.[17] Thus, if a paper clip is sold by a person intending that it be used to hold a roach, that clip is paraphernalia, even though traditionally it would not be so used. Similarly, if a roach clip is sold by a person intending that it be used as a tie clip, that item is not drug paraphernalia.

■ Finally, this scienter requirement also mitigates any vagueness[18] in the law with respect to the inadequacy of notice to the dealer that his conduct is proscribed.[19]

Section –4 lists 13 factors that the trier of fact, in addition to all other logically relevant factors, should consider "in deter-

---

13. *State v. Dunn,* Kan., 662 P.2d 1286 (1983) (convictions of head shop owners for possession with intent to deliver drug paraphernalia upheld, based on contents of entire shop seized under a search warrant; under "know or reasonably should know" language); *Cochran v. Commonwealth,* Pa.Commw., 450 A.2d 756 (1982) (conviction of salesperson for selling or offering to sell drug paraphernalia upheld, presumably based on contents of entire shop; under "knowing" requirement. The court noted that appellant did not challenge the sufficiency of the evidence presented to prove the "knowing" requirement).

14. *See, e.g., New England Accessories Trade Ass'n v. City of Nashua, supra* n. 6, at 6; *Tobacco Accessories & Novelty Craftsmen Merchants Ass'n v. Treen,* 681 F.2d 378, 383 (5th Cir.1982); *Stoianoff v. Montana, supra* n. 6, at 1220; *General Stores, Inc. v. Bingaman,* 695 F.2d 502, 504 (10th Cir.1982).

15. *State v. Cooley,* Utah, 603 P.2d 800, 802 (1979).

16. *State v. Kennedy,* Utah, 616 P.2d 594 (1980); *State v. Whittinghill,* 109 Utah 48, 163 P.2d 342 (1945).

17. *See, e.g., Casbah, Inc. v. Thone, supra* n. 7, at 560; *Record Revolution No. 6 v. City of Parma,* 492 F.Supp. 1157, 1170 (N.D.Ohio 1980), *aff'd,* 709 F.2d 534 (6th Cir.1983).

18. In *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), the Supreme Court said:

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

See also *State v. Pilcher,* Utah, 636 P.2d 470 (1981).

19. *Flipside, supra* n. 5, at 102 S.Ct. 1193.

mining when an object is drug paraphernalia." This section provides further guidelines to law enforcement personnel and to the trier of fact as to what items constitute drug paraphernalia and, in so doing, lessens the danger of arbitrary enforcement. It also gives individuals further concrete notice as to what conduct is proscribed.[20]

■ There is no question that the actions of third parties [21] or the testimony of third parties [22] may be relevant with several of these factors in determining what is drug paraphernalia. However, this evidence alone would not be sufficient to convict an individual and is in fact only one step in the prosecutorial scheme. If third-party actions or testimony tend to indicate that an item is drug paraphernalia, the focus of inquiry must then shift to the intent of the individual charged.[23] Conviction thus cannot be had on the basis of transferred intent or guilt by association.

Section –5 defines the unlawful acts that constitute substantive criminal offenses. Appellant was convicted under § 58–37a–5(2), which states:

It is unlawful for any person to deliver, possess with intent to deliver or manufacture with intent to deliver any drug paraphernalia *knowing* that the drug paraphernalia *will be used* to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce a controlled substance into the human body in violation of this act. [Emphasis added.]

■ Construing the statute as a whole then, before a valid conviction of appellant can be had under § 58–37a–5(2) the State must prove each of the following elements beyond a reasonable doubt: (1) the defendant delivered (sold) certain objects or items; (2) the objects were drug paraphernalia as defined by the statute (in other words, the defendant delivered (sold) the items *intending* that they be used for the production or consumption of controlled substances); and (3) the defendant delivered (sold) the items *knowing* that the buyer of the item *would thereafter use them* with controlled substances. It is on this last element that the State has manifestly failed to carry its burden.

The Model Act proscribes a person's conduct if he knows *or reasonably should know* that the drug paraphernalia will be used with controlled substances. In interpreting this language the court in *Delaware Accessories Trade Ass'n v. Gebelein*[24] said that "even the illicit dealer, however, is not held legally responsible . . . for guessing what is in the mind of a buyer. The seller is safe as long as he does not actually know the buyer's purpose and as long as the objective facts that are there for him to observe do not give fair notice that illegal use will ensue."[25]

Utah has modified the language of the Model Act so as to strictly require that a person *know* that the buyer will use the paraphernalia for illegal purposes. Other states have similarly modified the Model Act language.[26] The few courts which have addressed that language have held that the language requires an actual knowledge by the accused.[27]

These courts have recognized that proving actual knowledge of the buyer's intent by the seller beyond a reasonable doubt

---

**20.** *See* n. 18.

**21.** *See* U.C.A., 1953, §§ 58–37a–4(3), (4), & (5).

**22.** *See* U.C.A., 1953, §§ 58–37a–4(12), (13).

**23.** *See, Casbah, supra* n. 7, at 560.

**24.** 497 F.Supp. 289 (D.Del.1980).

**25.** *Id.* at 294.

**26.** *See, e.g.,* New Hampshire (N.H.Rev.Ann. §§ 318–B:1(X–a), :2, :26 (Supp.1981); New Jer-

sey (N.J.Stat.Ann. §§ 24:21–46 to –53 (West Supp.1982); Pennsylvania (Pa.Stat.Ann. tit. 35, §§ 780–102(b), –113(a)(32–34), –113(i), –128(a)(1) (Purdon Supp.1982).

**27.** *See, New England Accessories, supra* n. 6, at 6; *Parma, supra* n. 17, at 1176; *Town Tobacconist v. Kimmelman,* 453 A.2d 209, 215 (N.J. Super.A.D.1982).

may be very difficult.[28] As the court in *Town Tobacconist v. Kimmelman*[29] said: "Absent an admission from the purchaser as to his intent, neither a merchant nor a policeman would have objective criteria upon which to base a reasonable belief that an item purchased is to be used with controlled substances."[30]

■ That difficulty, however, neither negates the statute nor allows the State to not meet its burden, and the burden of proving the defendant's guilt "is always upon the state: both initially and ultimately."[31]

■ In this case, the State presented no evidence as to what appellant knew or did not know concerning the sale in question. The State did, however, present evidence as to the buyer's intent. The buyer, as a police informer, intended only to buy the items to gather evidence to be used to charge the appellant under the U.D.P.A. She did not intend to use the items with controlled substances. Therefore, it is legally and factually impossible for the appellant to have known that the items sold would be used for illicit purposes as required for conviction.

We therefore reverse the conviction and judgment of the trial court.

STEWART and HOWE, JJ., concur.

OAKS, Justice (concurring):

I concur in reversing the conviction because there is no proof that the defendant delivered drug paraphernalia "knowing" that it would be used in violation of the Act, as required in U.C.A., 1953, § 58–37a–5(2). The statutory requirement of knowledge will make it extremely difficult to enforce this provision of the present legislation, but we are bound by the terms of the law enacted by the Legislature.

Utah's legislation was patterned after the Model Drug Paraphernalia Act. Over forty states have adopted drug paraphernalia legislation, most patterned after the Model Act. Comment, "The Constitutionality of Anti-Drug Paraphernalia Laws—The Smoke Clears," 58 *Notre Dame L.Rev.* 833, 842 (1983). The comparable provision of the Model Act makes it a crime for a person to deliver drug paraphernalia "knowing, *or under circumstances where one reasonably should know*" that it would be used in violation of the Act. Comment, *id.* at 861 (emphasis added). Our Legislature omitted the emphasized language in its enactment of the Model Act. That omission, which leaves no alternative to the requirement that the prosecution prove actual knowledge, dictates the result of this case.

Our holding should not be understood as casting doubt on the feasibility and enforceability of so-called "head shop" legislation. State legislation utilizing the Model Act's "reasonable knowledge" requirement has almost invariably been sustained against constitutional challenges for vagueness. *Stoianoff v. Montana,* 695 F.2d 1214, 1220–22 (9th Cir.1983); *Kansas Retail Trade Co-op v. Stephan,* 695 F.2d 1343, 1346 (10th Cir.1982), and cases cited.

Another deviation from the terms of the Model Act introduces a vagueness that makes me doubtful about the validity of several provisions of the Utah legislation. For example, § 58–37a–5(2) makes it illegal for a person "to deliver . . . any drug paraphernalia, knowing that [it] will be used to plant, propagate, cultivate . . . contain, conceal, inject, ingest, inhale, or otherwise introduce *a controlled substance into the human body* in violation of this act." (Emphasis added.) On its face, this provision requires that in order to constitute a crime the drug paraphernalia must be delivered by one who knows that it will be used "to [various uses listed] a controlled substance into the human body." As to the last three verbs in the series, this sentence makes sense (*e.g.,* to "inhale a controlled

**28.** *Parma, supra* n. 17, at 1176; *Town Tobacconist, supra* n. 27, at 215.

**29.** *Town Tobacconist, supra* n. 27.

**30.** *Id.* at 215.

**31.** *State v. Curtis,* Utah, 542 P.2d 744, 746 (1975).

substance into the human body"). However, as to the first eighteen verbs ("plant" through "conceal") the sentence yields a meaning varying from the improbable (*e.g.,* "used to ... repack ... a controlled substance into the human body") to the nonsensical (*e.g.,* "used to ... cultivate ... a controlled substance into the human body"). The same puzzling syntax occurs in §§ 58–37a–3 and 58–37a–5(1).

The apparent problem is the Utah enactment's repositioning of the words "into the human body" from the position they occupied in the Model Act. The comparable provision of the Model Act makes it illegal for a person to "deliver ... drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, ... contain, conceal, inject, ingest, inhale, or otherwise introduce *into the human body a controlled substance* in violation of this Act." (Emphasis added.) Thus, in the Model Act the words "into the human body" only modify the words "otherwise introduce" and the entire series of legal proscriptions makes sense. In the Utah legislation, on the other hand, the words "into the human body" are not so limited. Their positioning makes them part of the object of the sentence—"a controlled substance into the human body," which, as a matter of necessary grammatical construction, yields meanings so at variance with common sense that the entire statute is suspect for vagueness.

DURHAM, J., concurs in the concurring opinion of OAKS, J.