186 N.J. Super. 449 (1982)
453 A.2d 209
THE TOWN TOBACCONIST, A PROPRIETORSHIP, A SHOP CALLED EAST OF CHERRY HILL, INC., A NEW JERSEY CORPORATION, ANNIE HULL'S, A PROPRIETORSHIP, EASTWEST, A PROPRIETORSHIP, FOREVER CHANGES, A PARTNERSHIP, HIGH OL' TIMES, A PROPRIETORSHIP, HIGH SUPPLY, INC., A NEW JERSEY CORPORATION, INDIAN COTTAGE, INC., A NEW JERSEY CORPORATION, INNER CIRCLE, A PROPRIETORSHIP, INNER DIMENSIONS, A PROPRIETORSHIP, INNER EYE, A PROPRIETORSHIP, JACK'S MUSIC, A PROPRIETORSHIP, MA-RAJA, INC., A NEW JERSEY CORPORATION, NATURE'S HEAD, A PROPRIETORSHIP, SMUGGLER'S ATTIC OF WILLOWBROOK, INC., A NEW JERSEY CORPORATION, AMSUN WORLD IMPORTS, INC., A NEW JERSEY CORPORATION, AHEAD OF OUR TYME, A PROPRIETORSHIP, TURNTABLE, A PROPRIETORSHIP, GEORGE DICKINSON, SANDY WILSON, MICHAEL SAITZ, MIKE HULL, ANNIE HULL, ALEX SUVINO, RICHARD COOK, BRUCE KESSLER, BRUCE SHORE, LARRY WARD, VIJAY GUPTA, JOSEPH ASERO, BARBARA ASERO, GLORIA BUBBLO, GLORIA KIRKPATRICK, JACK ANDERSON, CHAMP TAILOR, ERIC KNOEDLER, SOL INSPECTOR, TOM BAHMER, PAT BAHMER, KEN TERSTEN, JESSIE ROSE, JOHN SMITH, A FICTITIOUS NAME, MARY SMITH, A FICTITIOUS NAME, AND XYZ CORPORATION, A FICTITIOUS NAME, PLAINTIFFS-RESPONDENTS,
v.
IRWIN I. KIMMELMAN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 18, 1982.
Reargued April 26, 1982.
Decided May 14, 1982.
*451 Before Judges MICHELS, JOELSON and GAULKIN.
Daniel Louis Grossman, Deputy Attorney General, argued the cause for appellant (Irwin I. Kimmelman, Attorney General, attorney pro se; John DeCicco, Assistant Attorney General, of counsel; James R. Zazzali, former Attorney General, Robert E. Rochford, Deputy Attorney General, and Daniel Louis Grossman on the brief).
Roger A. Lowenstein, argued the cause for respondents (Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan, attorneys; Podvey, Sachs, Catenacci & Silber, P.C., Abbott S. Brown, H. Richard Chattman, Zulima V. Farber and Roger A. Lowenstein on the brief).
The opinion of the court was delivered by GAULKIN, J.A.D.
The Attorney General appeals from a final judgment which declared unconstitutional N.J.S.A. 24:21-48, 49 and 50; those sections make unlawful certain use, possession, distribution and advertising of "drug paraphernalia." We find the sections to satisfy constitutional requirements and accordingly reverse.
*452 Plaintiffs describe themselves as retailers of novelty items "which are, or may be, included as proscribed items" under the statute. Their claims were presented to the trial court on a largely agreed record. The parties stipulated that all plaintiffs would testify, as one plaintiff did, that they did not know the meaning of the statute, "including specifically as to how the intent aspects operated"; that they did not know which objects were paraphernalia per se and that they did not understand the definition of drug paraphernalia or how an item can become drug paraphernalia. The trial court found that it "must declare the definition [i.e., "drug paraphernalia"] unlawfully vague and, with it, the sections of the statute governing the plaintiffs' conduct, namely [N.J.S.A. 24:21-48, 49 and 50]." The judgment declares those three sections unconstitutional and enjoins the Attorney General from enforcing them "as against any retail merchant, distributor or other person or entity similarly situated."
The statutory sections invalidated by the trial court are portions of a recent supplement (L. 1980, c. 133; N.J.S.A. 24:21-46 et seq.) to the New Jersey Controlled Dangerous Substances Act (N.J.S.A. 24:21-1 et seq.). Based in substantial part on a Model Drug Paraphernalia Act drafted by the Drug Enforcement Administration of the United States Department of Justice, the supplemental act defines "drug paraphernalia" (N.J.S.A. 24:21-46) and declares that "it shall be unlawful for any person" to engage in certain kinds of conduct with respect to drug paraphernalia. N.J.S.A. 24:21-48 thus makes it unlawful
... to distribute or dispense, or possess with intent to distribute or dispense, or manufacture with intent to distribute or dispense, drug paraphernalia, knowing that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, ingest, inhale or otherwise introduce into the human body a controlled dangerous substance in violation of the provisions of the act to which this act is a supplement.
N.J.S.A. 24:21-49 declares it to be unlawful
... to place in any newspaper, magazine, handbill, or other publication any advertisement, knowing that the purpose of the advertisement in whole or in part, is to promote the sale of objects intended for use as drug paraphernalia.
*453 N.J.S.A. 24:21-50 simply transforms a section 48 violation from a fourth degree crime to a third degree crime where the actor delivers drug paraphernalia to a person under 18 years of age who is at least three years his junior.
"Drug paraphernalia" is defined in N.J.S.A. 24:21-46 as
all equipment, products and materials of any kind which are used or intended for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, ingesting, inhaling, or otherwise introducing into the human body a controlled dangerous substance in violation of the provisions of the act to which this act is a supplement. It shall include, but not be limited to: [here follows a lengthy listing of items.][1]
The Attorney General has promulgated guidelines for enforcement of these sections, which include directions that N.J.S.A. 24:21-48 and 50 may be enforced only by the Attorney General or county prosecutors; that no prosecution may be instituted thereunder with respect to items "which are commonly used for lawful purposes and are merely adaptable for use as drug paraphernalia" unless "they are displayed or otherwise offered for sale in conjunction with or in close proximity to other kinds of drug paraphernalia," and that N.J.S.A. 24:21-49 may be enforced only by the Attorney General.
Although the judgment does not declare N.J.S.A. 24:21-46 unconstitutional, the trial judge found its definition to be unconstitutionally vague and thus to infect the three sections here at issue. The core of the analysis expressed in his written opinion of March 12, 1981 is this:
The phrase "used or intended for use", that appears a dozen times renders the definition of drug paraphernalia unlawfully vague. It is impossible for any retailer to know whose use or whose intention he must be aware of. If it is "frequent" use, he can not tell how frequent it must be, or among what groups of people. If it is the customer's intention, then, before the customer arrives, the retailer can not tell if he is unlawfully stocking drug paraphernalia. The prior act of putting the item on his shelves would become unlawful only later, after the intentions of the yet unidentified customer are revealed.
[N.J.S.A. 24:21-48] outlaws a retailer's possessing drug paraphernalia with intent to sell it, "knowing that it will be used" in connection with unlawful CDS. *454 It is impossible to determine the lawfulness of the retailer's possession of multi-use items based on the prediction how many of tomorrow's customers will take items home and use them unlawfully. A retailer therefore can not decide whether to stock an item on the basis of its lawfulness, because its status as drug paraphernalia is not determinable until someone comes in to buy it.
An example may help. One of the statutory examples of drug paraphernalia is "containers ... used or intended for use in storing ... controlled dangerous substances". Any container of any shape or material or almost any size is included, if it is used or intended for storing CDS. Plastic sandwich bags may be and, I am told, frequently are so used. May a retailer other than a food store safely stock them? They are not designed for unlawful use or, in all likelihood, principally so used. But, a retailer whose customers are of a certain age or who stocks the trappings of youth may not confidently stock an item routinely sold in the supermarket down the street. There are probably other multipurpose items whose main use is in connection with CDS, and whose display and sale as multipurpose items may be more cynical. It may not be realistic to repeat loftily, as the plaintiff's witness did here, that one does not speculate what one's customers do with their purchases. That expresses an attitude best accompanied by a knowing wink. But the statutory definition does not distinguish between the ash tray, the baggie and the cigarette rolling paper, all true multipurpose items, and others whose market is more narrowly focused.
I must declare the definition unlawfully vague and, with it, the sections of the statute governing the plaintiffs' conduct, namely [N.J.S.A. 24:21-48, 49 and 50].
We find this analysis to be insufficiently supported by reason or persuasive authority.

I
Plaintiffs assert that N.J.S.A. 24:21-46 is impermissibly vague, as found by the trial judge, and that it is overbroad.
The proper approach to such a dual challenge was most recently stated by the United States Supreme Court in Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., ___ U.S. ___, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (Hoffman Estates v. Flipside):
In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct *455 of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law. [at ___, 102 S.Ct. at 1191, 71 L.Ed.2d at 369]
See, also, State v. Lashinsky, 81 N.J. 1, 15-16 (1979); State v. Profaci, 56 N.J. 346, 350 (1970).
Since N.J.S.A. 24:21-46 does not proscribe any conduct at all, it cannot be said to reach a substantial amount of constitutionally protected conduct; the overbreadth challenge is more properly directed to, and is therefore discussed below in connection with, the substantive provisions at issue. The claim of vagueness in the definitional language is without merit. As the Attorney General acknowledges, the language permits any item to be characterized as "drug paraphernalia" if it is "used or intended for use" in an activity involving controlled dangerous substances. The section is thus not unlike other provisions of the criminal law which define instrumentalities of crime according to their use or intended use.[2] On its face the statutory language is sufficiently precise to give "the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). As the court said in approving the very same phrase in municipal drug paraphernalia ordinances in Record Revolution No. 6, Inc. v. City of Parma, 638 F.2d 916 (6 Cir.1980), vacated and remanded 451 U.S. 1013, 101 S.Ct. 2998, 68 L.Ed.2d 384 (1981):
The statutory terms "use" or "intended for use" are not vague or overbroad. Their meaning, as commonly understood words of the English language, is clear. [at 929].
Plaintiffs urge that the phrase, "used or intended for use," is vague because of its "failure to indicate whose use or intention to use is being referred to" and because of "its complete failure *456 to enable a reasonable person to make the required prediction of the other individual's intent"; plaintiffs argue therefrom that the definitional section would permit criminal responsibility to turn on mere guesswork as to the act or intent of a person other than the person charged.
The argument is more properly addressed to N.J.S.A. 24:21-48 and 50, discussed below, which describe the substantive offenses. We agree with plaintiffs and the Attorney General that the phrase "used or intended for use" in N.J.S.A. 24:21-46 can refer to any person's use or intended use. That construction, however, does not create a danger that a defendant can be convicted solely for another's use or intended use since the substantive offenses, as presently discussed, clearly require scienter of the person charged. The separate intent requirements in the definitional and substantive provisions of a similar drug paraphernalia statute were clearly analyzed in Hejira Corp. v. MacFarlane, 660 F.2d 1356 (10 Cir.1981):
... it is to be remembered that there are two requirements necessary to establish guilt for violating the Colorado Drug Paraphernalia Act. First, the alleged violator must possess, sell or advertise drug paraphernalia; second, the possessor must intend to use the paraphernalia for illegal drug purposes, or the seller must intend for the buyer of the goods to use them for illegal drug purposes. It would seem, then, to be sufficient that the subjective intent, or mens rea, of the possessor or seller is found in the latter element of the offense. So analyzed, the prosecution would have to ask: Looking objectively is this person possessing or selling drug paraphernalia. If that question is answered in the affirmative, then the next question would be: looking subjectively, does this person intend to use the paraphernalia for illegal drug purposes or intend for the purchaser to use the paraphernalia for such purposes? Following this reasoning, then, while the definition of drug paraphernalia must be sufficiently narrow to enable possessors and sellers to reach an objective conclusion as to what items are likely to fall within that definition, it would not be necessary that the definition require that the possessor or seller of the item shall have personally designed and intended that the item be used for illegal drug purposes. The intent of the possessor or seller is manifested in the second part of the offense. The possessor seller may not be penalized for possessing or selling drug paraphernalia unless he has the requisite intent to use it, or for others to use it, for illegal drug purposes. [at 1366]
Although the court in Hejira Corp. noted that most courts considering the issue had interpreted the "used or intended for *457 use" phrase in the definitional section to refer to the act or intent of the person charged (ibid.; see, e.g., Opinion of the Justices, 121 N.H. 542, 431 A.2d 152, 154 (Sup.Ct. 1981); Mid-Atlantic Accessories Trade v. Maryland, 500 F. Supp. 834, 844 (D.Md. 1980)), we find it unnecessary, for the reasons expressed in this passage, to so limit the scope of the phrase.
Plaintiffs also assert that N.J.S.A. 24:21-46 creates an unconstitutional presumption that certain objects are "drug paraphernalia"; that contention is based upon its provision that drug paraphernalia "shall include, but not be limited to" a variety of items thereafter set forth. The argument is unpersuasive: the section does not create a presumption but simply describes the listed items as exemplars of those that could be drug paraphernalia if "used or intended for use" in a manner stated therein. Cf. Record Revolution No. 6., Inc. v. City of Parma, supra, 638 F.2d at 932; Mid-Atlantic Accessories Trade v. Maryland, supra, 500 F. Supp. at 845; Kansas Retail Trade Co-op v. Stephan, 522 F. Supp. 632, 641 (D.Kan. 1981); Lady Ann's Oddities, Inc. v. Macy, 519 F. Supp. 1140, 1150 (W.D.Okla. 1981).
Plaintiffs final challenge to the definitional section is directed to its provision that "the trier of fact, in addition to or as part of the proofs, may consider" certain kinds of evidence there described. We read these provisions as nothing more than an illustrative listing of possibly relevant considerations. The language does not purport to supersede any rules of evidence or to determine the propriety or weight of any such evidence in a given prosecution. Whether and to what extent the factors described in the statute may be utilized by the trier of fact must await particular prosecutions; the incorporation of those factors does not in any way undermine the facial validity of the section. Ibid.

II
The judgment appealed from invalidates only provisions describing substantive offenses. Central among these is N.J. *458 S.A. 24:21-48, quoted above, which declares unlawful certain activities with respect to "drug paraphernalia" as defined in N.J.S.A. 24:21-46. Plaintiff again urges that the section is both overbroad and vague.
N.J.S.A. 24:21-48 declares conduct to be criminal only if the actor engages therein "knowing that [the drug paraphernalia] will be used ... in violation of the provisions of the act to which this act is a supplement [i.e., the Controlled Dangerous Substances Act, N.J.S.A. 24:21-1 et seq.]". The requisite state of mind is described in N.J.S.A. 2C:2-2(b)(2):
Knowingly. A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result. "Knowing," "with knowledge" or equivalent terms have the same meaning.
The statute is thus carefully tailored, as the Attorney General argues, to reach only conduct which knowingly facilitates or promotes violations of the criminal law. It cannot seriously be argued that such a prohibition impinges on any constitutionally protected conduct. Although plaintiffs suggest that the section might reach innocent or lawful uses of items as well as unlawful uses, that possibility does not render it overbroad. Hoffman Estates v. Flipside, supra, found that such an argument "obviously lacks merit":
A retailer's right to sell smoking accessories, and a purchaser's right to buy and use them, are entitled only to minimal due process protection ... Regulation of items that have some lawful as well as unlawful uses is not an irrational means of discouraging drug use. [___ U.S. at ___, 102 S.Ct. at 1192, 71 L.Ed.2d at 371, n. 9]
The more salient objection made by plaintiffs is that N.J.S.A. 24:21-48 fixes a line of demarcation between criminal and noncriminal conduct which is so uncertain and imprecise as to render its prohibitions impermissibly vague. That objection implicates two considerations: whether the statute gives adequate notice of what is proscribed and whether it fixes sufficient standards for its objective and non-discriminatory enforcement. *459 Grayned v. City of Rockford, supra, 408 U.S. at 108-109, 92 S.Ct. at 2298-2299.
The section's requirement of "knowing" conduct in aid of a criminal violation surely mitigates any arguable vagueness and gives adequate notice of what is proscribed. See Hoffman Estates v. Flipside, supra, ___ U.S. at ___, 102 S.Ct. at 1195, 71 L.Ed.2d at 374; cf. Colautti v. Franklin, 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596 (1979); State v. Profaci, supra, 56 N.J. at 351. As the court said in Record Revolution No. 6., Inc. v. City of Parma, supra:
The requirement of knowledge on the part of the defendant, when coupled with use or intended for use in the definition of drug paraphernalia, does provide adequate notice and does sufficiently prevent arrest, prosecution or conviction of persons for innocent activities or mistake. As stated by the district court, "convicting an individual of selling drug paraphernalia under the ordinance requires proof of distribution of an item by an individual who intends it for use with illegal drugs knowing that it will be so used. Clearly this is not an innocent transaction." A person who acts with knowledge that the action will aid in criminal conduct can be held criminally responsible. [638 F.2d at 934-935]
Problems can readily be envisioned in the application of the statute to particular hypothesized facts. Plaintiffs' brief effectively capsulizes some of them:
Pipes and paper clips, for example, are not unique or inherently dangerous items and they do not bespeak a purchaser's intent. Does the purchaser's age, sex, mannerisms or dress afford a seller reason to believe an item will be used for illegal purposes? Absent an admission from the purchaser as to his intent, neither a merchant nor a policeman would have objective criteria upon which to base a reasonable belief that an item purchased is to be used with controlled substances. As to the numerous multipurpose items referred to in the statute, how is a store owner to determine whether his mere offer for sale will violate the law? Quite simply, he cannot.
The difficulties thus envisioned are not insignificant, but they do not affect the facial validity of the statute. The test here is whether "the law is impermissibly vague in all of its applications." Hoffman Estates v. Flipside, supra, ___ U.S. at ___, 102 S.Ct. at 1192, 71 L.Ed.2d at 371. A particular prosecution may well raise substantial questions as to the proper scope or application of the section or the adequacy of certain proofs, but those are matters which must be resolved in the context of *460 particular cases. Cf. State v. Finance American Corp., 182 N.J. Super. 33 (App.Div. 1981).
Similarly premature and speculative at this juncture is the suggestion, bottomed on these potential difficulties in its application, that N.J.S.A. 24:21-48 may be arbitrarily enforced. The danger of arbitrariness is substantially minimized by the Attorney General's guidelines which limit enforcement to himself and the county prosecutors. Cf. Hoffman Estates v. Flipside, supra, ___ U.S. at ___, 102 S.Ct. at 1196, 71 L.Ed.2d at 375. In any event the possibility of unconstitutional enforcement does not render the section facially invalid. As the court said in Hoffman Estates v. Flipside, supra, citing Seagram & Sons v. Hostetter, 384 U.S. 35, 52, 86 S.Ct. 1254, 1264, 16 L.Ed.2d 336 (1961):
Although it is possible that specific future applications may engender concrete problems of constitutional dimension, it will be time enough to consider any such problems when they arise. [___ U.S. at ___, 102 S.Ct. at 1196, 71 L.Ed.2d at 375]

III
Based upon its finding that the definition of "drug paraphernalia" in N.J.S.A. 24:21-46 is impermissibly vague, the trial judge found it necessary to invalidate N.J.S.A. 24:21-49, which declares unlawful certain placements of advertisements relating to drug paraphernalia. Since we find the definitional section constitutional we must reject the trial judge's rationale in invalidating the advertising prohibitions. Plaintiffs urge, however, that those prohibitions are unconstitutional on three further grounds: (1) the statute can be enforced against local advertisers who place advertisements in publications that circulate beyond New Jersey; (2) the statute could prevent New Jersey residents from receiving information about items alleged to be drug paraphernalia but available in jurisdictions that do not prohibit distribution of such paraphernalia, and (3) the statute will "prohibit or at least chill discussions concerning the reform of drug laws or other constitutionally protected discussions."
*461 These arguments require only brief comment. N.J.S.A. 24:21-49 is, again, narrowly drawn, imposing criminal liability only where the advertisement is placed
... knowing that the purpose of the advertisement in whole or in part, is to promote the sale of objects intended for use as drug paraphernalia.
The statute is thus directed only to advertisements which are known to have the purpose of aiding and promoting violations of the Controlled Dangerous Substances Act. That such an enactment does not impinge on constitutionally protected speech is made clear in Hoffman Estates v. Flipside, supra, where the court rejected a similar First Amendment argument:
The ordinance is expressly directed at commercial activity promoting or encouraging illegal drug use. If that activity is deemed "speech," then it is speech proposing an illegal transaction, which a government may regulate or ban entirely. Central Hudson Gas & Electric Co. v. Public Service Comm'n., 447 U.S. 557, 563-564 [, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341] (1980); Pittsburgh Press Co. v. Human Relations Comm'n, 413 U.S. 376, 388 [, 93 S.Ct. 2553, 2560, 37 L.Ed.2d 669] (1973). Finally, it is irrelevant whether the ordinance has an overbroad scope encompassing protected commercial speech of other persons, because the overbreadth doctrine does not apply to commercial speech. Central Hudson, supra, [447 U.S.] at 565, n. 8 [, 100 S.Ct. at 2351, n. 8]. [___ U.S. at ___, 102 S.Ct. at 1192, 71 L.Ed.2d at 370].
See also Opinion of The Justices, supra, 121 N.H. at 546, 431 A.2d at 155; and Casbah, Inc. v. Thone, 651 F.2d 551 (8 Cir.1981), where the court upheld similar advertising prohibitions and made the following additional comments which are pertinent here:
We acknowledge some difficulty in upholding the phrase "in part," which in Section 6 prohibits advertisements that only "in part" have the purpose of promoting the sale of drug paraphernalia. Arguably, this statutory language reaches into the protected area of advertising concerning lawful activity. We are obliged, however, to presume a legislative intent to act within constitutional bounds. Turchick v. United States, supra, 561 F.2d [719] at 723-24. Accordingly, we conclude that where drug paraphernalia is advertised along with innocent items, obviously the statute must forbid only that part of the advertisement relating to drug paraphernalia. The remainder of the advertisement is not condemned. [at 563-564].
We further conclude that the allegedly improper extraterritorial effect of the section is not a sound objection to its facial validity since it interdicts only advertising which invites violation of *462 New Jersey law. Cf. N.J.S.A. 2C:1-3; compare Record Revolution No. 6., Inc. v. City of Parma, supra, 638 F.2d at 937.

IV
Having found N.J.S.A. 24:21-48 unconstitutionally vague, the trial judge was necessarily led to the same finding as to N.J.S.A. 24:21-50, which declares a § 48 violation to be a third degree crime where the actor delivers drug paraphernalia to a person under 18 years of age who is at least three years his junior. We have found N.J.S.A. 24:21-48 to be constitutional and must find N.J.S.A. 24:21-50 to be valid as well.

V
Plaintiffs have relied upon a number of cases which have invalidated in part similar statutes of other jurisdictions. See, e.g., Nova Records, Inc. v. Sendak, 504 F. Supp. 938 (S.D.Ind. 1980); Weiler v. Carpenter, 507 F. Supp. 837 (D.N.M. 1981). Much of that case law concerns statutory language significantly different from our own; its authority, moreover, may be questioned in light of the recent expression of the United States Supreme Court in Hoffman Estates v. Flipside, supra. In any event we find that our reasoning and result are supported, as we have undertaken to show, by authority which is both more abundant and more persuasive.[3]
The judgment appealed from is therefore reversed and its injunctive provisions vacated; the matter is remanded to the Chancery Division for the entry of judgment dismissing the complaint with prejudice.

*463 APPENDIX A
24:21-46. Drug paraphernalia, defined; determination
As used in this act, "drug paraphernalia" means all equipment, products and materials of any kind which are used or intended for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, ingesting, inhaling, or otherwise introducing into the human body a controlled dangerous substance in violation of the provisions of the act to which this act is a supplement. It shall include, but not be limited to: a. kits used or intended for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled dangerous substance or from which a controlled dangerous substance can be derived; b. kits used or intended for use in manufacturing, compounding, converting, producing, processing, or preparing controlled dangerous substances; c. isomerization devices used or intended for use in increasing the potency of any species of plant which is a controlled dangerous substance; d. testing equipment used or intended for use identifying, or in analyzing the strength, effectiveness or purity of controlled dangerous substances; e. scales and balances used or intended for use in weighing or measuring controlled dangerous substances; f. diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used or intended for use in cutting controlled dangerous substances; g. separation gins and sifters used or intended for use in removing twigs and seeds from, or in otherwise cleaning or refining, marihuana; h. blenders, bowls, containers, spoons and mixing devices used or intended for use in compounding controlled dangerous substances; i. capsules, balloons, envelopes and other containers used or intended for use in packaging small quantities of controlled dangerous substances; j. containers and other objects used or intended for use in storing or concealing controlled *464 dangerous substances; k. objects used or intended for use in ingesting, inhaling, or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body, such as (1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls; (2) water pipes; (3) carburetion tubes and devices; (4) smoking and carburetion masks; (5) roach clips, meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand; (6) miniature cocaine spoons, and cocaine vials; (7) chamber pipes; (8) carburetor pipes; (9) electric pipes; (10) air-driven pipes; (11) chillums; (12) bongs; and (13) ice pipes or chillers....
In determining whether or not an object is drug paraphernalia, the trier of fact, in addition to or as part of the proofs, may consider the following factors: a. statements by an owner or by anyone in control of the object concerning its use; b. the proximity of the object to illegally possessed controlled dangerous substances; c. the existence of any residue of illegally possessed controlled dangerous substances on the object; d. direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows intend to use the object to facilitate a violation of this act; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this act shall not prevent a finding that the object is intended for use as drug paraphernalia; e. instructions, oral or written, provided with the object concerning its use; f. descriptive materials accompanying the object which explain or depict its use; g. national or local advertising whose purpose the person knows or should know is to promote the sale of objects intended for use as drug paraphernalia; h. the manner in which the object is displayed for sale; i. the existence and scope of legitimate uses for the object in the community; and j. expert testimony concerning its use.
NOTES
[1] The section is set forth in full in Appendix A to this opinion.
[2] E.g., N.J.S.A. 2C:5-5(a) (a burglar tool is an implement "adapted, designed or commonly used for" specified criminal conduct); N.J.S.A. 2C:39-1(r) (a "weapon" is "anything readily capable of lethal use or of inflicting serious bodily injury"); N.J.S.A. 2C:37-1(e) ("gambling device" is any device "which is used or usable in the playing phases of any gambling activity").
[3] Many of the reported litigations are cited and categorized in Opinion of the Justices, supra, 121 N.H. 543-545, 431 A.2d at 153-154; Casbah, Inc. v. Thone, supra, 651 F.2d at 558, n. 7; Mid-Atlantic Accessories Trade v. Maryland, supra, 500 F. Supp. at 842-843; and Lady Ann's Oddities, Inc. v. Macy, supra, 519 F. Supp. at 1143. See, also, Note, "Anti-Drug Paraphernalia Laws: Void For Vagueness," 61 B.U.L.Rev. 2 (1981): Note, "The Constitutionality of Drug Paraphernalia Laws," 81 Colum.L.Rev. 581 (1981).