615 P.2d 1250 (1980)
Ronald D. ELLIS, Plaintiff and Appellant,
v.
SOCIAL SERVICES DEPARTMENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, L.D.S. Social Services and C____ B____, Defendants and Respondents.
No. 16881.
Supreme Court of Utah.
July 28, 1980.
*1252 William A. Stegall, Jr. of Dart & Stegall, Salt Lake City, for plaintiff and appellant.
Allen M. Swan and J. Douglas Mitchell, Salt Lake City, for defendants and respondents.
HALL, Justice:
Plaintiff appeals the dismissal of his amended complaint for writ of habeas corpus whereby he had sought a determination that his illegitimate child was being "illegally restrained" and that he, the putative father, be awarded custody. Inasmuch as no evidence was taken below, there is no evidentiary record before the Court and the allegations of the verified complaint must be considered true for purposes of this appeal.[1]
Plaintiff is 23 years of age and C____ B____ (hereinafter referred to as "the child's mother") is 18 years of age. Both are residents of California and were engaged to be married on July 16, 1979. Approximately two weeks prior to the wedding, the child's mother terminated the engagement. At this time, both parties were aware that she was pregnant with plaintiff's child.
Several days prior to the birth of the child, the child's mother traveled from California to Utah without plaintiff's knowledge. Shortly after her arrival, she arranged to relinquish custody of the child, upon its birth, to either defendant Social Services Department of the Church of Jesus Christ of Latter-Day Saints or defendant L.D.S. Social Services (hereinafter collectively referred to as the "Agency"). The baby was born on December 15, 1979, and the child's mother advised the Bureau of Vital Statistics of the Division of Health, Utah Department of Social Services (hereinafter the "Bureau") that the father of the child was unknown. On December 19, 1979 *1253 she executed an "Affidavit and Release" whereby she relinquished physical custody of the child to the Agency and waived all parental rights thereto.
While still in California and upon learning of the birth of the child and the actions of the child's mother, plaintiff contacted his attorney concerning his parental rights. The attorney then apparently contacted the Agency by telephone on December 21, 1979, and informed it that plaintiff was the father of the child and that he intended to assert his parental rights. Nevertheless, the Agency refused to relinquish custody or to give plaintiff any information as to the child's whereabouts.
On January 2, 1980, plaintiff filed with the Bureau a notice of his claim of paternity and a statement of his willingness and intent to support the child. On January 4, 1980, plaintiff filed his "verified complaint for writ of habeas corpus" and a hearing thereon was scheduled for January 22, 1980. Defendants filed their motion to dismiss on January 14, and a hearing thereon was scheduled for January 21, 1980. Plaintiff filed an "amended complaint for writ of habeas corpus" on January 15.[2] At the January 21 hearing, the court granted defendant's motion to dismiss, from which ruling plaintiff now appeals.
Plaintiff makes three basic arguments on appeal: (1) by publicly acknowledging the child as his, plaintiff has legitimated and adopted the child pursuant to U.C.A., 1953, 78-30-12; (2) the notice of paternity was timely filed in this case; (3) the dismissal of his action denied plaintiff his constitutional rights of due process and equal protection.
Plaintiff first claims that by notifying the Agency of his paternity, by filing a notice of paternity with the Bureau, and by filing his complaint, plaintiff has publicly acknowledged and adopted the child as his. U.C.A., 1953, 78-30-12 provides as follows:
The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such with the consent of his wife, if he is married, into his family and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this chapter do not apply to such an adoption.
In State in Interest of M[3] this Court upheld the express provisions of the statute and ruled that the putative father's right to custody of his illegitimate child is superior to all others, except the child's mother. However, in 1975, the legislature enacted a statute which effectively limited the time in which the putative father may assert those rights where the mother has relinquished her rights to the child. U.C.A., 1953, 78-30-4(3) provides as follows:
(a) A person who is the father or claims to be the father of an illegitimate child may claim rights pertaining to his paternity of the child by registering with the bureau of vital statistics of the division of health, Utah department of social services, a notice of his claim of paternity of an illegitimate child and of his willingness and intent to support the child to the best of his ability. The bureau of vital statistics shall provide forms for the purpose of registering the notices, and the forms shall be made available through the bureau and in the office of the county clerk in every county in this state.
(b) The notice may be registered prior to the birth of the child but must be registered prior to the date the illegitimate child is relinquished or placed with an agency licensed to provide adoption services or prior to the filing of a petition by a person with whom the mother has placed the child for adoption. The notice shall be signed by the registrant and shall *1254 include his name and address, the name and last known address of the mother, and either the birthdate of the child or the probable month and year of the expected birth of the child. The bureau of vital statistics shall maintain a confidential registry for this purpose.
(c) Any father of such child who fails to file and register his notice of claim to paternity and his agreement to support the child shall be barred from thereafter bringing or maintaining any action to establish his paternity of the child. Such failure shall further constitute an abandonment of said child and a waiver and surrender of any right to notice of or to a hearing in any judicial proceedings for the adoption of said child, and the consent of such father to the adoption of such child shall not be required.
(d) In any adoption proceeding pertaining to an illegitimate child, if there is no showing that the father has consented to the proposed adoption, it shall be necessary to file with the court prior to the granting of a decree allowing the adoption a certificate from the bureau of vital statistics, signed by its director, which certificate shall state that a diligent search has been made of the registry of notices from fathers of illegitimate children and that no registration has been found pertaining to the father of the illegitimate child in question.
Therefore, whenever the natural mother relinquishes custody of the child either to an agency or to an individual for purposes of adoption, in order to protect his rights under U.C.A., 1953, 78-30-12, the putative father must file a notice of paternity with the Bureau. Where he fails timely to act, he "shall be barred from thereafter bringing or maintaining any action to establish his paternity of the child."[4] In the instant case, the child's mother has relinquished custody of the child for the purpose of adoption, and for plaintiff to avail himself of the provisions relating to "public acknowledgment" of the child, he must show that he has acted timely.
In his second contention on appeal, plaintiff claims that indeed he has timely filed his notice of paternity pursuant to U.C.A., 1953, 78-30-4(3). He urges that paragraph (b) thereof should be interpreted as follows: The putative father's notice must be filed either before the child is relinquished to an adoption agency, or in any event, prior to the filing of a petition for adoption. Such an interpretation is contrary to the express language of the statute. Paragraph (b) specifically provides that if the child is placed privately, the father has until the filing of the adoption petition in which to file his notice of paternity; on the other hand, if the child is placed through an agency, the father has only until the mother relinquishes custody of the child to the agency.
Plaintiff's reliance on paragraph (d) in support of his interpretation of paragraph (b) is misplaced. He asserts that paragraph (d) makes it clear that he has up until a petition for adoption is filed in which to file his notice; otherwise, where notice is filed with the Bureau after custody of the child has been relinquished to an agency, but before the adoption petition is filed, the illegitimate child may not be adopted by anyone. The primary flaw in this argument is that paragraph (d) does not address rights of putative fathers, but rather gives directions to the court in proceedings involving the adoption of illegitimate children. Before a petition for adoption may be granted,[5] the party seeking the adoption must file with the court a certification of the Bureau which indicates whether there is a father's notice of paternity on file pertaining to the illegitimate child in question. If there is no notice on *1255 file, the court may grant the petition for adoption. If there is a notice on file, the court must first decide whether it was timely filed pursuant to other provisions of the statute.[6] Indeed, as indicated supra, paragraph (c) bars the father from "maintaining any action to establish his paternity of the child" after the child is given up for adoption. (Emphasis added.)
As a final point on appeal, plaintiff challenges the constitutionality of U.C.A., 1953, 78-30-4(3), claiming it to be contrary to basic notions of equal protection and due process.[7]
Plaintiff challenges the unequal treatment of the unwed mother and father, whereby only the mother's affirmative consent is required for the adoption of an illegitimate child. In support of his contention, plaintiff cites the case of Caban v. Mohammed.[8] In that case, the unwed father appealed from decisions of the New York state courts which allowed his children to be adopted by their natural mother and her present husband without his consent and against his wishes.[9] The natural father had previously resided with the mother and had contributed to the children's support for a number of years, appeared as the father on their birth certificates, and maintained consistent contact with the children after separating from the mother. The United States Supreme Court held that under such circumstances, the permitting of unwed mothers, but not unwed fathers, to veto the adoption of a child by withholding consent violated the Equal Protection Clause. The Court then went on to state the following:
In those cases where the father never has come forward to participate in the rearing of his child, nothing in the Equal Protection Clause precludes the State from withholding from him the privilege of vetoing the adoption of that child.
The problem present in Caban is obviated in this jurisdiction by the provisions of U.C.A., 1953, 78-30-12, as discussed supra. Where the father of an illegitimate child complies with the provisions of that statute, his rights with respect to the child are as though the child were born legitimate. There is therefore no merit to plaintiff's contention that he has been denied equal protection of the laws.
Plaintiff's due process argument challenges the constitutionality of the presumption that a father has abandoned his illegitimate child where he does not file a timely notice of paternity with the Bureau.[10] The claim is basically that the statute denies a putative father both notice and an opportunity to be heard.[11]
There is a general reluctance on the part of the judiciary to declare a legislative enactment facially unconstitutional.[12] All doubts should be resolved in favor of the constitutionality of a statute and no act should be declared unconstitutional unless it *1256 is clearly and palpably so.[13] A statute must be read to be consistent with basic constitutional rights, and will be upheld unless it contains a provision which expressly excludes a constitutional protection.[14] However, a statute fair upon its face may be shown to be void and unenforceable as applied.[15]
The statute in question provides that if the putative father fails to file his notice of paternity prior to the happening of certain events, he is thereafter barred. In the usual case, the putative father would either know or reasonably should know approximately when and where his child was born.[16] It is conceivable, however, that a situation may arise when it is impossible for the father to file the required notice of paternity prior to the statutory bar, through no fault of his own. In such a case, due process requires that he be permitted to show that he was not afforded a reasonable opportunity to comply with the statute.[17]
In his complaint, plaintiff asserts that the child's mother left California just prior to the birth of the child without advising him as to where the birth was to occur; that when the child was born, she declared the father to be unknown; and that she relinquished custody of the child just four days after its birth. The complaint was dismissed summarily on motion.[18] Plaintiff was not given an opportunity to present evidence to show as a factual matter that he could not reasonably have expected his baby to be born in Utah. He should be afforded an opportunity to make that showing. If he is successful in showing that the termination of his parental rights was contrary to basic notions of due process, and that he came forward within a reasonable time after the baby's birth, he should be deemed to have complied with the statute.
The lower court's ruling is therefore reversed and the case is remanded for further proceedings consistent with this opinion. Costs to plaintiff.
CROCKETT, C.J., and MAUGHAN, WILKINS and STEWART, JJ., concur.
NOTES
[1] On a motion to dismiss a complaint, the complainant is entitled to the benefit not only of the facts stated in the complaint, but also of the legitimate inferences to be drawn therefrom. 75 Am.Jur.2d Trial § 438; see also Christensen v. Lelis Automatic Transmission Service, 24 Utah 2d 165, 467 P.2d 605 (1970); Liquor Control Commission v. Athas, 121 Utah 457, 243 P.2d 441 (1952).
[2] The amended complaint merely named L.D.S. Social Services as a party not previously joined.
[3] 25 Utah 2d 101, 476 P.2d 1013 (1970); that the statute applies to a bachelor as well as a married father, see In re Garr's Estate, 31 Utah 57, 86 P. 757 (1906).
[4] U.C.A., 1953, 78-30-4(3)(c).
[5] Paragraph (d) says nothing as to the filing of a petition, as asserted by plaintiff, but relates only to the granting of a petition.
[6] The statute is to be given a reasonable and sensible construction, Curtis v. Harmon Electronics, Utah, 575 P.2d 1044 (1978). The objective is to bring consonance to the various provisions of the statute, Monson v. Hall, Utah, 584 P.2d 833 (1978).
[7] Constitution of Utah, Article I, §§ 2 and 7; Constitution of the United States, Amendment XIV, § 1.
[8] 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979).
[9] The New York statute required actual consent to adoption to be given by both parents of a child born in wedlock, but only the consent of the mother of a child born out of wedlock.
[10] U.C.A., 1953, 78-30-4(3)(c).
[11] That such are essential elements of due process, see Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); National Farmers Union Property & Casualty Co. v. Thompson, 4 Utah 2d 7, 286 P.2d 249 (1955); and Fuller-Toponce Truck Co. v. Public Service Comm., 99 Utah 28, 96 P.2d 722 (1939).
[12] See Salt Lake City v. West Gallery Corp., Utah, 584 P.2d 839 (1978) citing Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).
[13] Parkinson v. Watson, 4 Utah 2d 191, 291 P.2d 400 (1955).
[14] 16 Am.Jur.2d, Constitutional Law § 225, and cases cited therein.
[15] Great Northern Railway Co. v. Washington, 300 U.S. 154, 57 S.Ct. 397 81 L.Ed. 573 (1937); United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938).
[16] Notice requirements may be satisfied where necessarily implied. See Tatlow v. Bacon, 101 Kansas 26, 165 P. 835 (1917); error dismissed in 251 U.S. 537, 40 S.Ct. 55, 64 L.Ed. 402 (1919); and Singuefield v. Valentine, 159 Miss. 144, 132 So. 81 (1931).
[17] See Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).
[18] The effect of the court's ruling was that plaintiff had not complied with the statute and was therefore forever barred from claiming custody of the child.