**Ernie ZAMORA, Plaintiff and Appellant,**

v.

**Lorin DRAPER, Robert B. Clements and Joe Greiner, Defendants and Respondents.**

No. 17263.

Supreme Court of Utah.

Aug. 6, 1981.

Paul Gotay, Ogden, for plaintiff and appellant.

Scott Daniels, Salt Lake City, Timothy W. Blackburn, Ogden, for defendants and respondents.

CROCKETT, Retired Justice:

Plaintiff Ernie Zamora appeals from the granting of the defendants' motion to dismiss his complaint, wherein he alleges that he was assaulted by them. The dismissal was based on the defendants' averment that they are Ogden Police Officers and that the plaintiff failed to file the bond provided for in Section 78–11–10, U.C.A., 1953.

That statute states:

Before any action may be filed against any sheriff, constable, peace officer, . . . when such action arises out of, or in the course of the performance of his duty, . . . the proposed plaintiff, as a condition precedent thereto, shall prepare and file . . . a written undertaking with at least two sufficient sureties in an amount to be fixed by the court, . . . for the payment to the defendant of all costs and expenses that may be awarded against such plaintiff, including a reasonable attorney's fee to be fixed by the court . . . . the prevailing party therein shall, . . . recover from the losing party therein such sum as counsel fees as shall be allowed by the court.

Three issues are raised by plaintiff:

First, that the statute does not apply because he sues the defendants as laymen, not as police officers;

Second, that the statute is unconstitutional; and

Third, particularly so as applied to him, because he is impecunious and unable to furnish the bond.

### Charging Defendants as Private Individuals

In regard to plaintiff's argument that inasmuch as his complaint expressly charges the defendants as private individuals, and not as police officers, the statute does not apply, the following observations are pertinent:

There can be no doubt about the proposition that the statute was never intended, nor can it be properly applied, as a blanket protection against suits for alleged wrongs done by persons who happen to be peace officers where the alleged wrongs have no connection with their official duties.[1] The other side of that proposition is that when it reasonably appears to the court that the alleged wrong arises out of actions in connection with, or related to, the performance of an officer's duty, a person suing him should not be able to circumvent the statute by simply alleging that the defendant acted outside his duty and thus in his private capacity.

1. See *Wright v. Lee*, 104 Utah 90, 138 P.2d 246 (1943).

■ Upon the basis of the plaintiff's averments and representations to the trial court that the defendants were not acting as peace officers, as opposed to the affidavits of the defendants asserting that they were, there appears to be a diametric dispute on that issue, which needs to be resolved before the court could assume it to be a fact, and peremptorily dismiss the action on the ground that the defendants were acting as police officers and not as private individuals.[2]

### Constitutionality of the Statute

■ There are certain principles of law relating to the validity of statutes which have a bearing on the problem of constitutionality here presented. The first and foundational one is that the prerogative of the legislature as the creators of the law is to be respected. Consequently, its enactments are accorded a presumption of validity;[3] and the courts do not strike down a legislative act unless the interests of justice in the particular case before it require doing so because the act is clearly in conflict with the higher law as set forth in the Constitution.[4]

■ It is noteworthy that the statute under consideration has previously been involved in cases before this Court under differing circumstances and has not been declared unconstitutional.[5] With respect thereto, we see no persuasive reason to disagree with these propositions supportive of the validity of the statute: that peace officers are in an especially hazardous calling rendering a service essential to public safety and welfare. While it is the privilege of most of us to steer clear of situations where there is violence and danger, it is the sworn duty of peace officers to go into such situations. Without extenuating thereon, this exposes them to the possibility of becoming involved therein and of incurring animosities of those engaged in such troubles, with the consequent risks of lawsuits which may emanate therefrom.

Because of what has just been said, we see nothing inherently unreasonable in the legislature viewing it as within the police power of the sovereign, in the interest of maintaining the peace and good order of society, to provide this measure of protection to that class of officers who are willing to undertake that hazardous responsibility.[6] Therefore, it is our view that the statute in question is not necessarily unconstitutional as applied in usual and ordinary circumstances. But as has been recognized, a statute may be constitutional as applied in one set of circumstances, yet may conflict with some constitutional mandate if improperly applied in other circumstances.[7] This case is a good illustration, as will be seen from what is said below.

### Plaintiff's Alleged Impecuniosity

■ Plaintiff's contention that due to his impecuniosity he should not be required to furnish the bond that requires looking at and comparing other aspects of our law. This is so because the totality of the law is not always to be found in one statute.[8] It is often not only desirable, but necessary, to

2. This is said in full awareness of the wording of Sec. 78–11–10 which seems to require the furnishing of the bond "before any action may be filed against any ... officer ..." In this action, the complaint did not mention that the defendants were peace officers, the response of the defendants first raised that issue.

3. *Ellis v. Social Services Dept., etc.,* Utah, 615 P.2d 1250 (1980); *Newcomb v. Ogden City, etc.,* 121 Utah 503, 243 P.2d 941 (1952).

4. *Salt Lake City v. Perkins,* 9 Utah 2d 317, 343 P.2d 1106 (1959); 3 Am.Jur. 383, cited in our case of *Heathman v. Giles,* 13 Utah 2d 368, 374 P.2d 839 (1962).

5. See *Kiesel v. Dist. Ct.,* 96 Utah 156, 84 P.2d 782 (1938); *Wright v. Lee,* 101 Utah 76, 118 P.2d 132 (1941).

6. That legislature may treat a class of persons favorably for the purpose of preserving the public health, safety or welfare, see *Allen v. Intermountain Health Care, Inc.,* Utah, 635 P.2d 30 (1981), and authorities therein cited.

7. See *Ellis v. Social Services Dept.,* footnote 3 above, and authorities therein cited.

8. *Snyder v. Clune,* 15 Utah 2d 254, 390 P.2d 915 (1964).

give consideration to other provisions of the law bearing on the problem. If there appears to be overlapping or inconsistency, if it is possible to do so, the statutes should be so interpreted and applied as to avoid conflict, and to harmonize with higher principles of justice as set forth in the Constitution.

Such a higher principle of justice applicable to this controversy is stated in Article I, Section 11, of our Utah Constitution:

> All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party.

This assurance that everyone must have access to the courts to avail themselves of the processes of justice is implemented in Section 21–7–3:

> Any person may institute, prosecute, defend and appeal any cause in any court in this state by taking and subscribing, before any officer authorized to administer an oath, the following:
>
> I, AB, do solemnly swear (or affirm) that owing to my poverty I am unable to bear the expenses of the action or legal proceedings which I am about to commence . . . .

The following section, 21–7–4, further provides:

> On such oath or affirmation being filed with any justice of the peace or clerk of any court, such justice of the peace or clerk, as the case may be, shall at once file any complaint . . . do any and all things necessary or proper to be done as promptly as if such litigant had fully paid all the regular fees; . . .

It requires but little reflection to realize that if the requirement of furnishing a bond were in all circumstances an absolute bar to the commencement of an action, the purpose and effect of the constitutional provision and the statutes just quoted would be defeated, and injustices may go unrectified. For example: Assume some ever so outrageous mistreatment or abuse of a person who is in such abject poverty that he could not post a bond. Unless the filing fee and the bond are obviated by his sworn oath to those facts, he would be utterly helpless to avail himself of his right to access to the courts. It hardly need be pointed out that this could open the way to any kind of oppressive treatment however cruel or diabolical, without the perpetrator being brought to account.

It is suggested that indiscriminate allowance of the filing of such suits is contrary to the express wording of the statute and defeats its purpose of affording protection to peace officers against frivolous and/or vexatious lawsuits by compelling them to come forward and defend. A pertinent rejoinder to this is that the danger of filing meritless actions also exists as to other kinds of lawsuits. It is the responsibility of the courts not only to see that the purpose of the statute in protecting police officers is served, but also to safeguard the rights of persons who claim they have suffered injury.

The courts have the means at their command of conducting appropriate preliminary procedures to make a determination on these essential propositions: a) whether it is so clear and without dispute that it can be ruled as a matter of law that the action has no connection with or relationship to the defendants duties as police officers; and (b) even if it does, whether the plaintiff is in fact impecunious and unable to furnish the bond. As to latter, it is significant that the statute itself allows some flexibility wherein it provides that the bond shall be "in an amount fixed by the court . . . ." This would permit the court to fix the bond in accordance with the plaintiff's circumstances, however impoverished he may be, and yet allow him access to the court to seek justice, as assured by Sec. 11 of Article I of our State Constitution, quoted above.

Our conclusions are: That the statute should be so applied as to harmonize with the ideals embodied in our Constitution of

affording all persons equal justice under law, and of access to the courts to serve that purpose;[9] that to dismiss the plaintiff's complaint out of hand was improper; and further, that the interests of justice require that this case be remanded for proceedings consistent with this opinion, including a preliminary determination as to whether the alleged wrongful actions of defendants were related to their duties as police officers, and if so, as to plaintiff's ability to furnish a bond, and of what amount. No costs awarded.

HALL, C. J., and STEWART, HOWE and OAKS, JJ., concur.

MAUGHAN, J., did not participate herein; CROCKETT, Retired Justice, sat.

---

9. See *Boddie v. Conn*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), holding that it was denial of equal protection of the law to refuse impecunious divorce proceedings; but cf. *Kras v. United States*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) excluding bankruptcy proceedings from that rule.