*This opinion is subject to revision before final publication in the Pacific Reporter*

**2016 UT 56**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

IN RE E.K.S., a person under the age of eighteen.

C.B.S.,
*Appellant,*

*v.*

J.S.D. and R.A.D.,
*Appellees.*

No. 20150435
Filed December 6, 2016

On Certification from the Utah Court of Appeals

Seventh Juvenile, Price Dep't
The Honorable Scott N. Johansen
No. 1107450

Attorneys:

Marshall Thompson, Salt Lake City, for appellant

Mark H. Tanner, Orangeville, for appellees

Sean D. Reyes, Att'y Gen., Bridget K. Romano, Ass't Att'y Gen.,
Salt Lake City, for amicus Office of the Utah Attorney General

Virginia Ward, Salt Lake City, for amicus Journey of Hope, Inc.

CHIEF JUSTICE DURRANT authored the opinion of the court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE DURHAM, JUSTICE HIMONAS, and
JUSTICE PEARCE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶ 1 A mother whose parental rights to her daughter were terminated challenges on multiple constitutional grounds the statutory scheme that provides appointed counsel for indigent parents in state-initiated parental termination proceedings while

denying such counsel for indigent parents in privately initiated proceedings. C.B.S. (Mother), after having her parental rights terminated in a proceeding where she was unrepresented by counsel, argues that the statutory scheme at issue is unconstitutional as a violation of federal due process and that due process required she be appointed counsel during the termination proceedings. We hold that while the statutory scheme is not facially unconstitutional, the court erred in relying on it to deny Mother's request for counsel. We accordingly reverse in part and remand for further proceedings.

## Background

¶ 2  On August 3, 2014, Mother gave birth to her daughter, E.K.S. At the time, Mother was on probation and faced additional incarceration for probation violations and additional criminal activities. After giving birth to E.K.S., Mother entrusted her daughter to her sister, J.S.D., and brother-in-law, R.A.D., (collectively, Adoptive Parents) to care for E.K.S. until Mother's release. Soon thereafter, Mother failed to comply with the terms of her probation and was arrested. On October 27, 2014, the trial court terminated Mother's probation and sentenced her to serve out her original sentence, zero to five years. On that day, Adoptive Parents petitioned for permanent custody of E.K.S., and the case was transferred to juvenile court. After Mother began serving her prison term, Adoptive Parents converted their custody petition to a petition to terminate Mother's parental rights. Mother responded to the amended petition by denying the allegations and requesting the juvenile court appoint an attorney to represent her. Mother's request for court-appointed counsel did not contain any allegation that she was indigent.

¶ 3  The juvenile court, by way of an order on February 27, 2015, advised Mother that she had a right to counsel, but that "a public defender is not available as this is a private petition." The court's decision was apparently based on Utah Code section 78A-6-1111(2), which prohibits the appointment of counsel in private proceedings.[1] There was no factual finding by the court as to Mother's indigency, and no indication in the record that the court considered the multi-

---

[1] At the time of the court's decision, that section stated: "Counsel appointed by the court may not provide representation as court-appointed counsel for a parent or legal guardian in any action initiated by, or in any proceeding to modify court orders in a proceeding initiated by, a private party." UTAH CODE § 78A-6-1111(2) (2015).

factor analysis outlined in *Lassiter v. Department of Social Services*.[2] The court then scheduled the termination proceeding for May 14, 2015. Mother, on two separate occasions, requested that the court grant an extension for "anything after July 7, 2015, [her] projected release date." In both requests, she indicated that she was attempting to find and hire a lawyer to represent her and was "very limited as to what [she] can do in [prison]." Her second petition also indicated she was having a difficult time participating in discovery. Adoptive Parents opposed the continuance, arguing that Mother's incarceration was one of their bases for seeking a termination of her parental rights.

¶ 4   During the termination proceedings at the juvenile court, Mother was unrepresented by counsel. The court denied Mother's requests for continuances on the day of the trial, though it specifically addressed only the first request. At the end of the proceeding, the juvenile court found by clear and convincing evidence that Mother was unfit as a parent and had failed to make more than token efforts to become fit. The court also determined that the best interests of E.K.S. supported placement with Adoptive Parents. Accordingly, the juvenile court terminated Mother's parental rights and awarded custody of E.K.S. to Adoptive Parents. Mother appealed, and the court of appeals certified the case to us.

## Standard of Review

¶ 5   The central questions in this case concern the constitutionality of Utah Code section 78A-6-1111(2) (2015) and the constitutional due process right to appointed counsel in parental rights termination proceedings.[3] "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness."[4] We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(b).

## Analysis

¶ 6   Mother raises both a facial and an as-applied challenge to Utah Code section 78A-6-1111(2). She first argues that the statute is facially unconstitutional under the United States Supreme Court's

---

[2] 452 U.S. 18, 27–32 (1981).

[3] Mother has argued that the issues she raises were preserved for appeal, which argument Adoptive Parents have not contested. We conclude that Mother's due process arguments were preserved.

[4] *Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177.

decision in *Lassiter v. Department of Social Services*.[5] She then argues that the statute unconstitutionally prohibited the trial court from appointing counsel for her under the due process analysis set forth in *Lassiter*. Although Mother has raised a number of other constitutional arguments related to section 1111(2), we find the due process issue to be dispositive of this appeal and accordingly do not address Mother's alternative arguments.[6] Before addressing the due process issue, however, we briefly discuss Adoptive Parents' argument that constitutional protections do not apply in this case because there is insufficient state action.

## I. All Termination Proceedings Involve Sufficient State Action to Trigger Constitutional Protections

¶ 7   Adoptive Parents argue that "it is not clear that the United States Supreme Court would consider the termination of parental rights in a privately initiated action the degree of state action that inculcates Fourteenth Amendment protections." This argument goes to whether the constitutional provisions cited by Mother even apply to this case because it was a private party—and not the State—that sought termination of Mother's parental rights. Without state action, they argue, the protections of the Constitution do not apply.[7]

¶ 8   Both we and the federal Supreme Court have made clear that there is sufficient state action in privately initiated parental termination proceedings to trigger constitutional protections. In *Swayne v. L.D.S Social Services*,[8] we stated that "[a] parent's rights may only be . . . terminated through the power of the state. When a private party facilitates a mother's relinquishment [of a child], . . . the party becomes a state actor if it also effectuates the state's termination [of parental rights]."[9] Similarly, the United States

---

[5] 452 U.S. 18 (1981).

[6] Mother also argues that the Due Process Clause of the Utah Constitution—Article 1, § 7—should be interpreted as providing a right to appointed counsel in all termination proceedings and that the equal protection clauses of both the United States and Utah Constitutions forbid the state from providing a statutory right to appointed counsel in state-initiated termination proceedings while denying that right in privately initiated termination proceedings.

[7] *See Swayne v. L.D.S. Soc. Servs.*, 795 P.2d 637, 640 (Utah 1990).

[8]   *Id.* (holding that there was sufficient state action to trigger constitutional protections in a termination proceeding initiated by a private adoption agency).

[9] *Id.* (citation omitted).

Supreme Court in *M.L.B. v. S.L.J.*[10] held that the case "involv[ed] the State's authority to sever permanently a parent-child bond," despite the fact it was a private party who initiated the termination proceedings.[11] The Court noted that regardless of the initiating party, "the challenged state action remains essentially the same: [the mother] resists the imposition of an official decree extinguishing, as no power other than the State can, her parent-child relationships."[12] As this caselaw makes clear, because parental rights can be terminated only by the state through a judicial order, all termination proceedings involve state action sufficient to trigger constitutional protections.

¶ 9 Having established that constitutional protections are implicated in termination proceedings, we turn to a discussion of the constitutionality of Utah Code section 78A-6-1111(2) and of Mother's due process rights under *Lassiter v. Department of Social Services*.

### II. The Juvenile Court Erred by Concluding that Section 78A-6-1111(2) Prohibited It from Considering Whether to Appoint Counsel for Mother

¶ 10 As we discuss below, although we hold that Mother's facial attack on the statute fails, we ultimately conclude that the juvenile court erred in its determination that Utah Code section 78A-6-1111(2) prohibited the court from considering whether to appoint counsel for Mother. Because of this error, the court failed to determine whether Mother was indigent and whether due process required the appointment of counsel. Accordingly, we reverse in part and remand for the juvenile court to make these determinations. We begin our discussion by reviewing the controlling precedent, the Supreme Court's decision in *Lassiter v. Department of Social Services*.[13] We then address Mother's challenges to the applicability of section 1111(2) in her case.

### A. Under Lassiter v. Department of Social Services, *Due Process Requires a Case-by-Case Analysis of Three Factors*

¶ 11 All parties agree that the juvenile court had a duty under *Lassiter v. Department of Social Services* to determine whether Mother was entitled to appointed counsel. In *Lassiter*, the North Carolina

---

[10] 519 U.S. 102 (1996).

[11] *Id.* at 116 & n.8.

[12] *Id.* at 116 n.8.

[13] 452 U.S. 18 (1981).

Durham County Department of Social Services (Department) sought to terminate Ms. Lassiter's parental rights because she was incarcerated for twenty-five to forty years, had neglected her child, and had not shown any indication that she was interested in or working toward reunification with her child.[14] After a hearing, in which Ms. Lassiter was unrepresented by counsel, the trial court found she had willfully "failed to maintain concern or responsibility for the welfare of the minor" and that "it was 'in the best interests of the minor'" to have Ms. Lassiter's parental rights terminated.[15] Ms. Lassiter appealed, arguing "that, because she was indigent, the Due Process Clause of the Fourteenth Amendment entitled her to the assistance of counsel, and that the trial court had therefore erred in not requiring the State to provide counsel for her."[16] After several levels of appeal, the Supreme Court granted certiorari to consider Ms. Lassiter's due process argument.[17]

¶ 12 After reviewing its due process precedent, the Court stated that "an indigent's right to appointed counsel . . . has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation."[18] The Court thus concluded there is a "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty."[19] Despite this conclusion, the Court held there may be some parental rights termination proceedings—proceedings that bear no risk of deprivation of physical liberty—where the circumstances of the case rebut the presumption that counsel is required to be appointed only when there is a risk of incarceration.[20] In such

---

[14] *Id.* at 21 ("[T]he Department alleged[] she 'has not had any contact with the child since December of 1975' and 'has willfully left the child in foster care for more than two consecutive years without showing that substantial progress has been made in correcting the conditions which led to the removal of the child, or without showing a positive response to the diligent efforts of the Department of Social Services to strengthen her relationship to the child, or to make and follow through with constructive planning for the future of the child.'").

[15] *Id.* at 22–24.

[16] *Id.* at 24.

[17] *Id.*

[18] *Id.* at 25.

[19] *Id.* at 26–27.

[20] *See id.* at 31.

circumstances, when the presumption is overcome, the Court held that due process requires that counsel be appointed.

¶ 13 In order to determine whether the presumption is overcome, the Court described three relevant factors that must be balanced: "the private interests as stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions."[21] Courts "must balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom."[22] The Court held that if "the parent's interests were at their strongest, the State's interests were at their weakest, and the risks of error were at their peak," the presumption against the appointment of counsel in non-criminal proceedings could be overcome and the party would be entitled to court-appointed counsel.[23] Thus, the Court "le[ft] the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered" on a case-by-case basis.[24] And as discussed above, this constitutional balancing analysis applies regardless of whether a private party or the state initiates the termination proceeding.[25]

¶ 14 With this due process framework in mind, we turn now to our discussion of Mother's federal due process arguments, which center in *Lassiter*'s case-by-case balancing analysis. We first discuss Mother's argument that section 78A-6-1111(2) is facially unconstitutional and conclude it is not. We then address whether the juvenile court erred by concluding that section 1111(2) required it to deny her request for appointed counsel without consideration of her due process rights under *Lassiter* and hold that it did.

*B. Section 78A-6-1111(2) Is Not Facially Unconstitutional*

¶ 15 Mother argues that the plain language of section 78A-6-1111(2) is facially unconstitutional under *Lassiter v. Department of Social Services*.[26] Consequently, she claims that the trial court erred by relying on that statute to deny her request for counsel. By asserting a

---

[21] *Id.* at 27.

[22] *Id.*

[23] *Id.* at 31.

[24] *Id.* at 32.

[25] *See M.L.B. v. S.L.J.*, 519 U.S. 102, 116 & n.8 (1996).

[26] 452 U.S. 18 (1981).

facial challenge to the statute, Mother bears the burden of "establish[ing] that no set of circumstances exist[] under which the [statute] would be valid."[27] This is a high bar, as we are reluctant "to declare a legislative enactment facially unconstitutional,"[28] and we resolve all doubts "in favor of the constitutionality of a statute."[29] Under this standard, Mother's facial challenge to the statute fails.

¶ 16 Section 78A-6-1111 applies to "any action in juvenile court."[30] At the time Mother requested counsel,[31] subsection (2) of that section read as follows: "Counsel appointed by the court may not provide representation as court-appointed counsel for a parent or legal guardian in any action initiated by, or in any proceeding to modify court orders in a proceeding initiated by, a private party." Mother argues that section 1111(2) operates as a categorical prohibition on the appointment of counsel in privately initiated termination proceedings, and that this prohibition is irreconcilable with the Supreme Court's decision in *Lassiter* that indigent parents in parental termination proceedings may in some circumstances be entitled as a matter of due process to court-appointed counsel. Thus, Mother argues, because the statute may in some circumstances unconstitutionally deny an indigent parent his or her due process right to court-appointed counsel, the statute is unconstitutional on its face. We disagree.

¶ 17 Accepting for purposes of this appeal that section 78A-6-1111(2) operates as a categorical restriction on the courts' ability to appoint counsel for indigent parents in privately initiated juvenile court proceedings, Mother has failed to show that there are no circumstances under which the statute would be constitutional. In general, a court has discretion as to whether to appoint counsel in

---

[27] *State v. Herrera*, 1999 UT 64, ¶ 4 n.2, 993 P.2d 854 (third alteration in original) (citation omitted).

[28] *Ellis v. Soc. Servs. Dep't of the Church of Jesus Christ of Latter-Day Saints*, 615 P.2d 1250, 1255 (Utah 1980).

[29] *Id.*

[30] UTAH CODE § 78A-6-1111(1)(a).

[31] While Mother's case was pending on appeal, the Legislature amended the statute, appending the following language to subsection (2): "except that in a private action to terminate parental rights the court may appoint counsel to represent an indigent parent if it finds that the failure to appoint counsel will result in a deprivation of due process." Indigent Defense, 2016 Utah Laws ch. 177 (codified at UTAH CODE § 78A-6-1111(2)).

civil matters.[32] This discretion can be limited in two ways: first, a statute or constitutional provision may require that counsel be appointed, as in certain parental termination cases.[33] Second, a statute may do just the opposite and forbid the appointment of counsel. Section 1111(2), as interpreted by Mother, would be an example of the latter. It limits the court's discretion to appoint counsel to indigent parents involved in privately initiated proceedings in juvenile court, including proceedings other than for the termination of parental rights.

¶ 18 In order to succeed in a facial challenge to section 1111(2), Mother bears the burden of showing that the statute always unconstitutionally prohibits the appointment of counsel. This in turn requires Mother to establish that indigent individuals involved in privately initiated juvenile court proceedings—including non-termination proceedings—are always constitutionally entitled to court-appointed counsel. For if there are circumstances in which a court is not constitutionally required to appoint counsel, then section 1111(2) may validly proscribe the court's discretion to do so of its own accord. Mother has not made this argument, and such an argument would be unavailing.[34] Simply showing that the statute may, in certain circumstances, unconstitutionally restrict the court's ability to appoint counsel is insufficient for a facial challenge.[35]

¶ 19 Indeed, even if we were to narrowly interpret section 1111(2) solely as a prohibition on the appointment of counsel in privately initiated parental termination proceedings, the statute would still not be facially unconstitutional. Under *Lassiter*, due

---

[32] *See Burke v. Lewis*, 2005 UT 44, ¶¶ 23–26, 122 P.3d 533.

[33] *See* UTAH CODE § 78A-6-1111(1)(c) (requiring the appointment of counsel to indigent parents in certain proceedings initiated by the state, such as neglect and parental termination proceedings); *Lassiter*, 452 U.S. at 31 (holding that due process may require the appointment of counsel to indigent parents in certain cases).

[34] *See Lassiter*, 452 U.S. at 31 ("[N]either can we say that the Constitution requires the appointment of counsel in every parental termination proceeding.").

[35] *See Gillmor v. Summit Cty.*, 2010 UT 69, ¶ 27, 246 P.3d 102 ("[I]n asserting a facial challenge, [a] party avers that the statute is so constitutionally flawed that *no set of circumstances exists under which the [statute] would be valid*." (second and third alterations in original) (emphasis added) (citation omitted)).

process requires the appointment of counsel only in certain circumstances.[36] The Court was clear that the Constitution does not "require[] the appointment of counsel in every parental termination proceeding,"[37] but instead requires a case-by-case balancing of the relevant factors. And if the particular circumstances of a case reveal that due process does not require counsel to be appointed, the only way counsel could be appointed is if the court exercised its discretion. In these circumstances, where due process does not require the appointment of counsel, section 1111(2) operates in a constitutional manner to restrict the court's discretion to make such an appointment on its own. Ultimately, no due process rights can be violated by a prohibition on the appointment of counsel if there is not a due process right to counsel to begin with. Section 1111(2) is therefore not facially unconstitutional under the federal Due Process Clause because it operates constitutionally in at least some circumstances.[38]

¶ 20 Of course, our conclusion that section 78A-6-1111(2) is facially constitutional does not mean the statute will always operate in a constitutional manner. There may arise circumstances where the statute would seem to restrict a juvenile court's ability to appoint counsel for an indigent parent where due process requires it.[39] In such circumstances, if a court applies the statute and refuses to appoint counsel despite the requirements of due process, the indigent parent may, as Mother has done here, raise an as-applied

---

[36] *See Lassiter*, 452 U.S. at 31 ("If, in a given case, the parent's interests were at their strongest, the State's interests were at their weakest, and the risks of error were at their peak, it could not be said that the *Eldridge* factors did not overcome the presumption against the right to appointed counsel, and that due process did not therefore require the appointment of counsel. But . . . the *Eldridge* factors will not always be so distributed . . . .").

[37] *Id.*

[38] The 2016 amendment to section 78A-6-1111(2), although superfluous to the extent it establishes that the statute cannot override due process rights, has clarified that the prohibition on the appointment of counsel extends only to those cases where counsel is not required to be appointed as a matter of due process. *See* 2016 Utah Laws ch. 177 (codified at UTAH CODE § 78A-6-1111(2)).

[39] We recognize that the 2016 amendment to the statute has obviated this concern, but we address the statute as it existed at the time of the relevant proceedings.

challenge to the statute. We turn now to Mother's arguments on this point.

*C. The Juvenile Court Erred by Relying on Section 78A-6-1111(2) to Deny Counsel Without Considering Mother's Circumstances*

¶ 21 As discussed above, although we reject Mother's argument that Utah Code section 78A-6-1111(2) is facially unconstitutional, this does not dispose of her claim that the statute was unconstitutionally applied in her case. Mother argues that the juvenile court improperly relied on section 1111(2) to conclude that she could not be entitled to court-appointed counsel and therefore failed to consider her due process rights as set forth in *Lassiter*. Adoptive Parents agree with Mother that the court erred by not conducting the *Lassiter* analysis. The record, though sparse as to the issues on appeal today, supports Mother's claim that the court decided Mother's request for counsel solely on the basis of section 1111(2) without considering her due process rights.

¶ 22 The juvenile court's explanation for its denial of Mother's request for counsel was simply that "a public defender is not available as this is a private petition." This conclusion is mistaken. The Supreme Court held in *Lassiter* that counsel may be required to be appointed as a matter of due process in some parental termination cases,[40] and this holding applies equally to both privately and state-initiated termination proceedings.[41] The mere fact that the petition was initiated by a private party does not obviate the constitutional guarantees of due process.

¶ 23 The juvenile court's erroneous conclusion appears to have been based on section 78A-6-1111(2)'s prohibition on the appointment of counsel in privately initiated proceedings.[42] Accordingly, we agree with Mother that the trial court erred by

---

[40] *See Lassiter*, 452 U.S. at 31.

[41] *See M.L.B. v. S.L.J.*, 519 U.S. 102, 116 & n.8 (1996); *In re K.A.S.*, 2016 UT 55, ¶¶ 2, 22–23, --- P.3d --- (applying the *Lassiter* analysis to a privately initiated termination proceeding and holding that the father "had a federal due process right to counsel in the district court proceedings").

[42] *See* UTAH CODE § 78A-6-1111(2) (2015) ("Counsel appointed by the court may not provide representation as court-appointed counsel for a parent or legal guardian in any action initiated by, or in any proceeding to modify court orders in a proceeding initiated by, a private party. . . .").

deciding her request for counsel on the basis of the language of section 1111(2) without determining whether counsel should be appointed under the analysis set forth in *Lassiter*. As discussed above, section 1111(2) can prohibit the appointment of counsel only if such prohibition comports with the requirements of due process. And due process required the court to consider whether, despite section 1111(2)'s prohibition, Mother was entitled to appointed counsel under *Lassiter*.

¶ 24 The court's error in this regard precludes further analysis by this court. Because the court seemed to treat section 1111(2) as wholly dispositive of Mother's request for counsel, it failed to conduct any additional analysis as to Mother's circumstances. Indeed, not only did the court fail to consider the due process analysis set forth in *Lassiter*, it also failed to make the preliminary determination as to whether Mother was indigent. The due process protections described in *Lassiter* depend on whether the individual is indigent, which necessarily requires an initial determination that the individual is indeed indigent.[43] And we are in no position to make such a finding on appeal.[44] Accordingly, we hold that the court erred in its reliance on section 78A-6-1111(2) to deny counsel without consideration of Mother's circumstances and due process rights, and we remand for further proceedings.[45] Upon remand, the court

---

[43] *See In re K.A.S.*, 2016 UT 55, ¶ 40 ("The right to counsel is available only to indigent individuals.").

[44] Although Adoptive Parents agree that the court erred by failing to conduct the *Lassiter* analysis, they encourage us to perform that analysis for the first time on appeal as a matter of judicial efficiency. We decline to do so because of the juvenile court's failure to make any determination of indigency. Such fact-finding is best left to the lower court. *See In re United Effort Plan Trust*, 2013 UT 5, ¶ 17, 296 P.3d 742 ("[A] 'lower court often has a comparative advantage in its firsthand access to factual evidence.'" (citation omitted)). Thus we "leave the decision whether due process calls for the appointment of counsel for [Mother] in [these] termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review." *Lassiter*, 452 U.S. at 32 (citation omitted).

[45] Mother also makes an equal protection argument that she should be entitled to her attorney fees and costs on appeal because indigent parents in state-initiated proceedings are given attorney fees for the first appeal of a termination proceeding under 1111(1)(g). Because we cannot determine whether Mother was indigent, we do

(Continued)

should carefully consider this court's application of the *Lassiter* analysis in *In re K.A.S.*[46]

**Conclusion**

¶ 25 We reaffirm today that privately initiated parental termination proceedings involve sufficient state action to trigger constitutional protections. And although we reject Mother's facial challenge to Utah Code section 78A-6-1111(2), we hold that the juvenile court erred by relying on the statute to deny counsel without considering Mother's circumstances and due process rights, as set forth in *Lassiter v. Department of Social Services*. We accordingly remand for further proceedings. Upon remand, the court should determine whether Mother is indigent and, if so, should conduct the *Lassiter* analysis in light of our decision in *In re K.A.S.*

---

not address her argument and must deny her request. *See In re K.A.S.*, 2016 UT 55, ¶ 39 n.12.

[46] *See In re K.A.S.*, 2016 UT 55, ¶¶ 22–38. As also noted in *K.A.S.*, the issue of whether *Lassiter* requires that indigent parties be appointed counsel on appeal is not before us today. *See id.* ¶ 39 n.12. We accordingly do not reach it.